**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**JOHN NUÑEZ,**
Plaintiff,

v.

**FEDERAL AVIATION ADMINISTRATION,**
Defendant.

FILED BY _MC_ D.C.

JUN 2 3 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Civil Action No. _____

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT AND FREEDOM OF INFORMATION ACT

### TABLE OF AUTHORITIES

#### Cases

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ................. Passim

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ........................................... 2, 13

*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) ....................................... 25

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) ....................................... 25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................... 27

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015) ................................................................. 16

## Statutes and Regulations

5 U.S.C. § 552 ................................................................................................ Passim

5 U.S.C. § 552(a)(4)(B) ................................................................................................ 6

5 U.S.C. § 552(a)(4)(E) ................................................................................................ 30

5 U.S.C. §§ 701–706 ................................................................................................ Passim

28 U.S.C. § 1331 ................................................................................................ 6

## Administrative Materials

FAA Advisory Circular AC 90-103A ................................................................................ 23, 29

## Other Authorities

Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) ................................................................ 26

**Plaintiff,** John Nuñez, files this Complaint for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and alleges as follows:

## **INTRODUCTION**

1. This action arises from the FAA's refusal to produce an unredacted Enforcement Investigative Report ("EIR") in Case No. 2022FS050509. This redacted report was relied on to impose a civil penalty against Plaintiff and has since been invoked by American Airlines to justify a continued ban on Plaintiff's travel, including in filings in *Nuñez v. American Airlines*, Case No. 1:25-cv-21630-RKA.

2. The FAA's continued withholding of material portions of the EIR under FOIA Exemptions 5 and 6 is unlawful. The redactions obscure factual summaries, procedural records, and enforcement conclusions directly relevant to ongoing litigation and to Plaintiff's liberty interests.

3. Plaintiff has exhausted all administrative remedies. The FAA has refused to provide adequate justification for the redactions and failed to produce a Vaughn Index or permit in camera review.

4. The FAA's actions are arbitrary, capricious, and violate both FOIA and the APA. They also violate procedural norms by denying Plaintiff access to government records directly impacting his legal rights and third-party litigation.

5. FAA's actions have enabled American Airlines—a private litigant—to selectively rely on redacted agency records in active litigation while Plaintiff remains denied full access.

   This imbalance impairs due process and creates judicial estoppel vulnerabilities.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B), as Plaintiff resides in Miami-Dade County and the records are constructively located in this District.

## PARTIES

8. Plaintiff John Nuñez is a U.S. citizen and resident of Miami, Florida. He is the subject of FAA Enforcement Case No. 2022FS050509 and the requester under FOIA Appeal No. 2088751.

9. Defendant Federal Aviation Administration is an agency of the United States located in Washington, D.C., and is subject to the APA and FOIA.

## FACTUAL BACKGROUND

10. Plaintiff was a passenger on American Airlines Flight 1124 on June 3, 2022. Allegations

from crew led the FAA to initiate an enforcement action (Case No. 2022FS050509),

resulting in a $4,500 civil penalty.

11. Plaintiff was never arrested or referred to law enforcement. There was no TSA referral or classification above Level 2.

12. FAA produced a redacted version of the EIR pursuant to FOIA Request No. 2025-03358. The report's central portions—evaluative and factual—were blacked out.

13. In a June 10, 2025 letter to Congressman Carlos Gimenez, the FAA admitted that witness testimony was exaggerated. This admission waives any deliberative process privilege

(see *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)).

14. On March 28, 2025, American Airlines sent Plaintiff a letter reversing the travel ban due

to "changed circumstances." This action demonstrated that no ongoing threat existed and undermined any remaining need for redactions.

15. On April 9, 2025, attorney Kelly Kolb—counsel for American Airlines—emailed

Plaintiff citing the FAA's Initial Decision as justification for continued blacklisting. This

reliance conflicts with Kolb's own legal filings discrediting the FAA decision's relevance.
This contradiction evidences judicial estoppel and improper third-party use of

government records.

16. The FAA failed to produce DEN (Domestic Events Network) or CERS (Cabin Event

Reporting System) documentation required when labeling a passenger a Level 2 threat.

This procedural failure supports APA claims (see *Mach Mining, LLC v. EEOC*, 575 U.S.

480 (2015)).

17. The ALJ presiding over Plaintiff's enforcement hearing, Judge Douglas Rawald, found lead witness Ana Maria Sanchez had exaggerated events. Other witnesses were either discredited or failed to testify.

18. FAA investigator Ronny Moon failed to interview key exculpatory witnesses, including Maria Quiroz. FAA ignored Plaintiff's references to available evidence, violating APA Standards.

19. Plaintiff has filed a FOIA appeal (No. 2088751), a supplemental letter, and a congressional request for oversight. No adequate justification for redactions has been Provided.

20. Plaintiff is actively litigating against American Airlines in *Nuñez v. American Airlines*, Case No. 1:25-cv-21630-RKA. In that case, American Airlines relies on FAA redacted records, including those Plaintiff is not permitted to access.

21. On September 3, 2024, American Airlines' legal department sent Plaintiff an internal email (Exhibit G) stating the ban remains in effect due to FAA findings. This reveals that the redacted material continues to impact Plaintiff in real-world consequences.

22. The FAA's withholding thus serves a private litigant while harming Plaintiff's litigation rights. It creates unequal access to government records, contrary to FOIA's transparency

Mandate.

23. FAA Advisory Circular AC 90-103A confirms procedural expectations for handling passenger threat levels. Its omission in the EIR further evidences improper protocol.

24. Plaintiff submitted complaints to the DOT Office of Inspector General. The pattern of procedural failure, inconsistent disclosures, and alignment with a private party's interests is well documented.

## CLAIMS FOR RELIEF

### Count I: FOIA Violation (5 U.S.C. § 552)

25. FAA's continued withholding of redacted materials violates FOIA where:

- There is no ongoing investigation;

- The report concerns Plaintiff;

- Factual summaries are not privileged (see *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980));

- The agency has waived deliberative privilege (see *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002)); and

- Selective disclosure to third parties bars exemption reliance (see *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)).

26. FAA's failure to produce a Vaughn Index, allow in camera review, or explain redactions violates FOIA.

***Count II: Arbitrary and Capricious Conduct (APA, 5 U.S.C. § 706)***

27. FAA's selective concealment—while allowing third-party reliance on redacted

material—constitutes arbitrary and capricious conduct under *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983).

28. The FAA's internal contradictions, procedural irregularities, and waiver of privilege

render its enforcement posture legally untenable.

29. The failure to follow protocol under AC 90-103A, lack of DEN/CERS filings, and refusal
to disclose discredited or incomplete records violate APA standards.

30. FAA's concealment now supports judicial estoppel against American Airlines and

violates public policy favoring transparency.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Declare the FAA's withholding of unredacted portions of the EIR unlawful;

B. Order the FAA to produce a complete, unredacted copy of the EIR;

C. Declare the FAA's redactions arbitrary and capricious under the APA;

D. Enjoin the FAA from permitting third-party reliance on redacted records while denying

Plaintiff full access;

E. Declare the redacted EIR material to Plaintiff's pending civil action in *Nuñez v. American

Airlines*, Case No. 1:25-cv-21630-RKA;

F. Order the FAA to produce a Vaughn Index identifying each redacted portion and justification;

G. Order in camera review of the unredacted EIR;

H. Vacate any enforcement action relying on redacted material or concealed procedural failings;

I. Award Plaintiff costs and reasonable attorney's fees under 5 U.S.C. § 552(a)(4)(E); and

J. Grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint for Declaratory and Injunctive Relief was served on the following parties in accordance with Rule 4(i) of the Federal Rules of Civil Procedure via certified mail, return receipt requested, on this 24th day of June, 2025:

1. **United States Attorney for the Southern District of Florida**
   Attn: Civil Process Clerk
   99 N.E. 4th Street, Third Floor
   Miami, FL 33132

2. **Attorney General of the United States**
   U.S. Department of Justice
   950 Pennsylvania Avenue, NW
   Washington, DC 20530-0001

3. **General Counsel**
   U.S. Department of Transportation
   1200 New Jersey Avenue, SE
   Washington, DC 20590


Executed this 24th day of June, 2025.



Respectfully submitted,

**John Nuñez**
14475 SW 23rd Terrace
Miami, FL 33175
johnnunez@ymail.com
(786) 425-1966
**Pro Se Plaintiff**

## EXHIBIT LIST

| EXHIBIT | TITLE / DESCRIPTION | RELEVANCE |
|---|---|---|
| **EXHIBIT A** | Redacted FAA Enforcement Investigative Report (EIR) | Central record sought in FOIA request; subject of improper withholding under Exemption 7. |
| **EXHIBIT B** | FAA FOIA Response Letter (Initial Denial) | Denial of access to the EIR; triggers administrative appeal and exhaustion. |
| **EXHIBIT C** | FAA FOIA Appeal (Filed by Plaintiff) | Exhaustion of administrative remedies under FOIA; preserves right to sue. |
| **EXHIBIT D** | FOIA Submission Confirmation Email | Confirms timely and proper submission of FOIA request under 5 U.S.C. § 552. |
| **EXHIBIT E** | FAA Order Denying Plaintiff's Motion to Dismiss (June 10, 2025) | Contains the agency's own findings discrediting core witness testimony and showing limited factual basis for enforcement. |
| **EXHIBIT F** | Congressional Correspondence with Congressman Carlos Gimenez | Shows external oversight and the FAA's acknowledgment of administrative (not criminal) nature of the case. |
| **EXHIBIT G** | Docket Entry 43 – Defendant's Reply in Related Federal Case (Núñez v. American Airlines, Inc., Case No. 1:25-cv-21630-RKA) | Shows continued reliance by American Airlines on disputed FAA findings. |

| | | |
|---|---|---|
| **EXHIBIT H** | March 28, 2025 Letter from American Airlines to Plaintiff | Demonstrates American Airlines' reliance on FAA findings to justify extrajudicial travel restrictions; key to estoppel and due process claims. |
| **EXHIBIT I** | FAA FOIA Appeal Response (June 20, 2025) – Refusal to Consider Supplement | FAA rejects new material that undercuts Exemption 7 claim; illustrates arbitrary process and confirms exhaustion. |
| **EXHIBIT J** | FAA Initial Decision by Judge Douglas Rawald – Case No. 2022FS050509 | Discredits core testimony and factual claims in the redacted EIR; undermines basis for continued withholding; supports Plaintiff's APA and FOIA claims. |

# Exhibit A

Title: Redacted Enforcement Investigative Report (FAA Case No. 2022FS050509)

**Description:**
This is the complete redacted version of the Enforcement Investigative Report (EIR) produced to Plaintiff by the FAA in response to FOIA Request No. 2025-03358. It consists of 46 pages and reflects the FAA's application of FOIA Exemptions 5 and 6 to withhold investigative content from public release.

**Relevance to this Case:**
This exhibit is central to the present APA/FOIA action. It forms the basis for Plaintiff's claim that the FAA has unlawfully withheld critical investigative records in violation of the Freedom of Information Act. The redactions prevent Plaintiff from accessing material facts used in FAA enforcement proceedings and subsequently cited by third parties.

**Relation to Overlapping Related Case:**
This same EIR is indirectly relied upon by American Airlines in Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA. In that case, the airline references FAA findings and a civil penalty arising from this report to justify its conduct and to oppose Plaintiff's claims. The FAA's continued redaction of the report therefore impairs Plaintiff's due process rights in the related litigation, underscoring the material and legal significance of the withheld portions.

RIS: FO 2150-1

| ENFORCEMENT INVESTIGATIVE REPORT<br>(Read Order 2150.3 for instructions) | Report Number<br>2022FS050509 | Related Number |
|---|---|---|

### ALLEGED VIOLATOR IDENTIFICATION

1. Name    NUNEZ, JOHN

    DBA Name

    Designator

2. Address (Include zip code)

    14475 SW 23RD TERRANCE

    MIAMI          FL       33175

    UNITED STATES OF AMERICA

TELEPHONE NUMBER    (786)683-9575    3. DATE OF BIRTH 1974/05/05    4. SEX M

| 5. FAA Cert. # | 6. FAA Certificate Type<br>NONE | Business Concern<br>INDIVIDUAL |
|---|---|---|

7. Aviation Employer

### AIRCRAFT, ENGINE, PROPELLER, COMPONENT OR APPLIANCE INVOLVED

| 8. MAKE | 9. MODEL | 10. IDENT. NUMBER<br>ACFT SN |
|---|---|---|
| 11. Owner Name | | 12. Address (Include zip code) |

### ALLEGED VIOLATION

| 13. Date Occurred<br>2022/06/03 | 14. Time<br>19:00:00 | 15. Date Known to FAA<br>2022/06/03 | 16. Region of Discovery<br>SW |
|---|---|---|---|
| 17. Location | BARRANQUILLA, COLOMBIA (BAQ)<br>Airport ID | | Sec Cat |

18. Regulations Believed Violated

█████████

RIS: FO 2150-1

| ENFORCEMENT INVESTIGATIVE REPORT (Read Order 2150.3 for instructions) | | Report Number 2022FS050509 | | Related Number | |
|---|---|---|---|---|---|

**18. Regulations Believed Violated (Continued)**

Remarks:   NO PREVIOUS CASE FOUND. JLF

### RELATED DATA

| 19. Type | 20. Sub Type | 21. Category | 22. Source | 23. Accident Assoc. |
|---|---|---|---|---|
| 17 | 98 | 18 | 11 | 00 |

24. Security Program

### INVESTIGATING FIELD OFFICE RECOMMENDATION

| 25. Type Action | 26. Sanction |
|---|---|
| ████████ | ████████ |

Reporting Inspector (Typed name)   MOON, RONNY   CASID

| 27. Date 2022/08/15 | 28. Investigating office FS05 | Chief (Typed name and signature) HIGHT, MARY K |
|---|---|---|

MARY K HIGHT

Digitally signed by MARY
K HIGHT
Date: 2022.08.15
16:03:02 -06'00'

RIS: FO 2150-1

| ENFORCEMENT INVESTIGATIVE REPORT<br>(Read Order 2150.3 for instructions) | Report Number<br>2022FS050509 | Related Number |
|---|---|---|

REGIONAL DIVISION REVIEW

| 29. Regulations Believed Violated | 30. Recommended Type Action |
|---|---|
| ██████████ | ██████████ |
| | 31. Recommended Sanction |
| | ██████████ |

Remarks:

| 32. Date | 2022/08/15 | 33. Region | FS |
|---|---|---|---|

Typed Name/Title/Signature
of Approving Official

KRUEGER, SCOTT
MANAGER

SCOTT JASON
KRUEGER

Digitally signed by SCOTT JASON
KRUEGER
Date: 2022.08.16 06:48:37 -05'00'

FAA Form 2150-5A (4-80)
Supersedes FAA Forms 1650-5, 5200-5, 8030-1 and 8030-2

FOR OFFICIAL USE ONLY

# SECTION B

## I. Statement of Basis for Legal Enforcement Action



## II. Statement of Case (Facts)

Regulation(s) or statute(s) violated: █████████████



**Facts:**

The American CMO initiated an investigation regarding a report of an apparent violation ████ ████████. The apparent violation occurred onboard American Airlines Flight # 1124 from Barranquilla, Columbia (BAQ) to Miami, Florida (MIA) on June 03, 2022. The initial notification came from the Washington Operations Center (WOC). *(IOP 1)*

A Request for Information (RFI) was sent to American Airlines Regulatory Affairs to obtain evidence needed to prove the case (crew reports, crew contacts, violators PNR, passenger list). The American Airlines Regulatory Affairs Package was received dated: July 25, 2022. **(IOP 2)**

John Nunez failed to follow flight attendant instructions to use the Main Cabin lavatory due to the First Class lavatory was occupied. Mr. Nunez began to argue and yell at the crew due to his advantage status allowed him to use any lavatory on board the aircraft. **(IOP 2A/ IOP 2B/ IOP 2C/ IOP 2D/ IOP 2E)**

Related to John Nunez failure to follow flight attendant instructions to use the Main Cabin lavatory, Mr. Nunez was denied an alcoholic drink. This enraged Mr. Nunez and he began yelling and arguing with crew. He would not follow crew instructions to return to his seat and remain seated. As a result of his unruly behavior, the flight deck was notified and the captain made the decision to return back to (BAQ). **(IOP 2A/ IOP 2B/ IOP 2C/ IOP 2D/ IOP 2E)**

Related to John Nunez failure to follow flight attendant instructions to use the Main Cabin lavatory, Mr. Nunez threatened to make a formal complaint due to his American Advantage Status. **(IOP 2A/ IOP 2B/ IOP 2C/ IOP 2D/ IOP 2E)**

All of the above occurrences were witnessed by working crewmembers. Crew Member contact information is provided **(IOP 2F)**

BAQ Airport Police met the aircraft. Airport Police did not remove Mr. Nunez. Mr. Nunez exited the aircraft on his own. The FAA LEAP Team was unable to locate a Police Report.

Multiple attempts were made, by phone and email, to contact Witness/Passengers ███████ ███████ (Seated in 17A/B). Those attempts were unsuccessful.

On 08/01/2022, A Letter of Investigation (LOI) was sent by Regular and Certified mail to passenger John Nunez; offering him an opportunity to submit a written statement of the events. He had 10 days to respond. **(IOP 3)**

On 08/04/2022, John Nunez formally replied to the LOI by email. Mr. Nunez also provided a Dr. Report and a video clip of his departure from the aircraft. **(IOP 4/ IOP 5/ IOP6)**

An authentication statement has been provided for all IOPs requiring authentication. **(IOP 7)**

## III.    Factors Affecting Sanction

### A. Severity Level



### B. Culpability



### C. Business Size



### D. Aggravating and Mitigating Factors

#### 1) Degree of Hazard

**2) Violation History**

██████████████

**3) Level of Certificate and Experience**

████████

**4) Compliance Disposition of Violator**

███████████████

**5) Corrective Action**

███████████████

**6) Inadvertence**

████████████

**7) Voluntary Reporting of Violations**

██████████████

**8) Criminal Conviction**

███████

**E. Ability to Pay**

██████████

## IV.  Other Information

- **Reliability of Evidence:**

████████████████████████

- **Conflicting Evidence:**

████████████████████████

EIR# 2022FS050509 John Nunez



- **Explanation provided by the alleged violator:**

- **Recommended basis for settlement:**



- **Special Mitigating, Extenuating, or Aggravating Factors:**

- **Opinions and Recommendation about the Type of Sanction:**



# SECTION C

## ITEMS OF PROOF

**IOP #1** – Initial Notification Security Incident from WOC (Washington Operations Center)

**IOP #2** – Copy of American Airlines Regulatory Affairs Package dated 07/25/2022

**IOP #3** – Signed Letter of Investigation dated 08/01/2022 sent FedEx Certified/Regular mail

**IOP #4** – John Nunez's Formal Email Response to the LOI

**IOP #5** – John Nunez's Dr. Report

**IOP #6** – Video Clip of John Nunez deplaning the aircraft

**IOP #7** – Authentication Statement for IOPs 1-6

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Inspector's Statement of Authenticity
Ronny Moon
08/12/2022

On 06/03/2022, The AALA CMO   received an initial report on an unruly passenger from the Washington Operations Center (WOC). **(IOP 1)**

A Request for Information (RFI) was sent to American Airlines Regulatory Affairs to acquire necessary evidence needed in this case (Crew Reports, Passenger List, Violators PNR, Contact Information). The Regulatory Affairs Package was received dated 07/25/2022.  **(IOP 2)**

On 08/01/2022, A Letter of Investigation (LOI) was sent by Regular and Certified mail to passenger John Nunez; offering him an opportunity to submit a written statement of the events.  He had 10 days to respond. **(IOP 3).**

On 08/04/2022, John Nunez formally replied to the LOI by email. Mr. Murphy provided a his response, Dr. Report and Video Clip of his departure.  **(IOP 4/ IOP 5/ IOP 6)**

Each IOP is a true and accurate copy of the documents provided to me. **(IOP 7)**

RONNY
G MOON
Ronny Moon

Digitally signed by
RONNY G MOON
Date: 2022.08.11
10:53:13 -05'00'

EIR# 2022FS050509 John Nunez

**Washington Operation Center Initial Notification**

P1 AAL 1124 06-03-2022 A319, BARRANQUILLA, COLOMBIA (SKBQ) - MIA, RETURNING TO
BARRANQUILLA AFTER REPORTING LVL 2 DISTURBANCE DUE TO DISRUPTIVE INTOXICATED PSGR.
COCKPIT SECURE. NEG FAM/FFDO. LEOS TO MEET FLIGHT AT GATE

**American Airlines**

July 25, 2022

Subject:     RFI  2034

| Flight | Date | Departure/Arrival |
|--------|------|-------------------|
| 1124 | 6/3/22 | BAQ/MIA |

Enc.

Attachments
1.      Crew List & Contact
2.      Suspect
3.      Aircraft Information
4.      XON List
5.      Flight Attendant Reports
6.      Security Coordinator Report
7.      PAX PNR
8.      PAX Manifest

## Crew List  and Contact

| BASE | SEAT | NAME | EMP # | PHONE |
|------|------|------|-------|-------|
| MIA | CA | JAFFE BL | | |
| MIA | FO | OCASIO JH | | |
| LIM | 01 | CELI R | | |
| LIM | 02 | SANCHEZ AM | | |
| LIM | 04 | QU;IROZ M | | |

## Suspect:

JOHN NUNEZ
14475 SW 23RD TERRANCE
MIAMI, FL 33175

JOHNNUNEZ@GMAIL.COM

## Aircraft Information:

| Flight Number : | 1124 | Actual Departure Airport : | BAQ |
|---|---|---|---|
| Scheduled Flight Departure Date / City : | Jun 3, 2022 / BAQ | Actual Departure Time : | 16:02 |

Aircraft Equipment Type : 67   N717
Flight Required Language : SPANISH

| | | SCHEDULED | ACTUAL | GATE |
|---|---|---|---|---|
| DEPARTURE : BAQ | OUT | 14:30  ( Jun 3, 2022 ) | 16:02  ( Jun 3, 2022 ) | 5 |
| ARRIVAL   : BAQ | IN | 14:30  ( Jun 3, 2022 ) | 17:44  ( Jun 3, 2022 ) | D27 |



| Company: | AA-American Airlines | Altitude (in 00's): | |
|---|---|---|---|
| Flight Number: | 1124 | | |
| Flight Date/Time: | 06/03/2022   00:00 | Fuel Dumped (Gal): | |
| Departure Station: | BAQ   Obtain Flight Info | Nose Number: | 717 |
| Arrival Station: | MIA | FAA Reg Number: | N717UW |
| Interrupt Station: | | Aircraft Type: | A319-112 |
| Phase Of Flight: | Departure | Fleet: | A319 |
| Departure Terminal: | Arrival Terminal: | | |
| Departure Gate: | 5 | Arrival Gate: | D27 |

## Passengers Not On Board (XON)



AA  1124  03Jun  BAQ    1840  319  XON LIST

| Last Name | First Name | PNR | Group Code | Class | Destination Airport | Seat | Pax Type | Bag | | | | | | Edit [I] | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | AI3 | B | MIA | | F | NB | BESH | CM | DOCV | DX | SC | SP | | | | | |
| | | | | V | MIA | | F | NB | CLUB | FL | | | | | | | | | |
| | | | AI2 | B | MIA | | F | NB | BESH | CM | DOCV | HCLR | SC | | | | | | |
| NUNEZ | JOHN | DTMOOV | | V | MIA | | E | NB | AIM | CLUB | CM | DOCV | ET | DX | FCC | FRG | PTEM | PTPH | SC |

07/08/2022

# Detail Note

## Event ID: 220601052

## Debrief

**Created:** 6/4/2022 08:10    Celi, Rosa          **Updated:** 6/4/2022 08:10    Celi, Rosa

Pax enraged when denied use of bc bathroom, that was busy and MC
bathroom empty. Carts were not in MC aisle. He is not an old
person , not special needs. Stated he was treated disrespectfully
because he was a D3. At that time we did not know he was a D3. He
went to the back and started to yield F/ As  in a threatening way.
He returned to his seat and asked for a Rum and coke. As he
appeared to be intoxicated . The drink was denied. He went to the
back and started screaming  again. At that time the captain was
advised an communicate with the F/As in MC and as he was in the
inter phone he could hear the pax screaming. By directions of the
captain I gave him a notice on disruptive behavior. But he started
shouting and showing his AA card and still complaining that was
treated disrespectfully because "did not pay his ticket".
Pax were terrified, I had to move pax seated on seats 17AB who
were next to him.

07/08/2022

# Detail Note

## Event ID: 220601052

Page 1 of 1

## Debrief

Created: 6/7/2022 17:44      Sanchez, Ana Maria      Updated: 6/7/2022 17:44      Sanchez, Ana Maria

The passenger begun to shout very close to f/a Rosario Quito's, I
told him not to shout her and get so close to her, then he begun
to shout both of us and get closer I have to put the cart across
the aft galley. He insult us said Petra's, idiot as, eatupidas and
Intjought he was going to hit us

07/08/2022

# Detail Note

## Event ID: 220601052

## Debrief

Created: 6/4/2022 23:10      Quiroz, Maria        Updated: 6/4/2022 23:10      Quiroz, Maria

After take off the passenger went to the lavatories at the aft of
the aircraft and he complained the purser didn't let him allowed
to use the lavatory of first class. He rised his voice and
approach to my face . And said he was a priority passenger , I
told him this lavatories are open and told him , there are safety
procedures and he is sitting here in main cabin so he can used
this lavatories at main cabin , he replied nobody's treats me like
shit . And I replay nobody is treating you bad . And low your
voice please .
My college stand up because we were seating in our jump seats and
she told him : sr , you don't need to yell we can listen . And he
replied: I'm not talking to you. Then  after 15 mins I went to
first class because the purser was talking to the captain and
explained the  problem . Then I came back to main cabin and he
asked me for rum and coke . I said I can offer you water ,coffee,
te and sodas . But alcohol I can't . And he replied : why? Because
you are yelling me .  I went to the back and he was walking behind
me and started again complaining and yelling at us . Ana Sanchez
and me . We noticed he  was a d3. Why are denied me alcohol.and we
told him because he still yelling at us. and started to insults us
he said we are f… idiots and stupid and I called the captain and
he could listen .
 I told then passenger to go back to your seat . You are being
very disrespectful and he is traveling with the benefits of the
company and he knows he  shouldn't have this behavior and being
disrespectful with any member of the company . He said he can buy
his own tickets . The purser showed and talked to him . He went to
his seat he received the disturbance paper and again started to
complained with the purser .
The captain decided to come back to Barranquilla before escalate
more

07/08/2022

# Detail Note

## Event ID: 220601052

## Debrief

**Created:** 6/3/2022 20:46    De La Hoz, Nick    **Updated:** 6/3/2022 20:46    De La Hoz, Nick

At 17:00 AA dispatch contacted BAQ ground personnel informing that
flight will return to airport  since passenger John Nunez Seating
in 17C had been disrespectful with flight attendant and was no
willing to follow instructions when asked. flight taxed at 17:30,
I met with Captain Jaffe who stated this passenger was verbally
assaulting flight attendants, he was asked twice to remain seated
and cooperate but he refused several times stating: "they will
hear from him once he place a formal complaint due to his
advantage status". FA #1 Rosa Maria Celi stated Mr. Nunez was
trying to use business class lavatories but was denied to do it
since he was flying on main cabin, she kindly asked him to use
afterwards lavatories, Mr. Nunez declined FA advise stating his
advantage status entitles him to use any cabin lavatories. FA #1
also mention that Mr. Nunez requested beverage and since this
service was not yet to be offer #1 asked him to remain seated,
cooperate and follow established procedures. unsatisfied with any
of his demands being fulfilled Mr. Nunez started arguing loudly
with flight attendants and refused to remain seated and verbally
threated to place a formal complain which will be closely followed
up because he has been an AA customer for several years.
Captain requested Law enforcement to board aircraft and remove
this passenger, however, there was no need for local police
officers to do so since Mr. Nunez deplaned the aircraft upon my
request. once he met local police officers in the gate he tried to
explain what had happened and started raising his voice and
initially refused to follow indications officers were asking. He
was escorted to immigration queues where he was speaking really
loud and complaining about the decision Captian made. Immigration
agents found his behavior unappropriated but they did not consider
him a threat so he was allowed to entry the country.  local police
office stated they will fine this passenger for his behavior as
soon as he deplaned and his lack of cooperation when ask to go to
immigration.
Crew shared their impression that Mr. Nunez was misbehaving
because he was intoxicated with alcohol, however, when meeting
passenger at jet-bridge he was not displaying any sign of
intoxication. No airport personnel identified signs of
intoxication when interacting with Mr. Nunez so there was no need
to interview him during boarding and clarify whether or not he
will possess a threat to the flight.

07/08/2022

# Detail Note

## Event ID: 220601052

### Passenger Name Record (*PNR)

**Created:** 6/4/2022 08:10    Celi, Rosa          **Updated:** 6/4/2022 08:10    Celi, Rosa

```
"* PLATINUM PRO * EMERALD *\n* PREMIUM CREDIT CARD *\n
1.1NUNEZ/JOHN\n 1   1124Y 03JUN F BAQMIA MM1   230P  630P /E\n 2
9559Y 04SEP S HDQFSG MM1   356P  357P /E\nTKT/TIME LIMIT\n
1.EM-D3\nPHONES\n  1.HDQ7866839575\nPASSENGER EMAIL DATA EXISTS
*PE TO DISPLAY ALL\nFREQUENT TRAVELER\n  1.AA 8N27WA4
HK AA   1.1 NUNEZ/JOHN\n      * PRO/EMD/PCC *\nAA FACTS\n   PCTC
DATA EXISTS - PLEASE USE *P4 TO VIEW\n  1.SSR EMPL AA
00276520/NUNEZ/002\n  2.SSR DOCO AA HK1//R/3862971133///USA\n
3.SSR PTEM AA HK1/JOHNNUNEZ//YMAIL.COM \n  5.SSR PTPH AA
HK1/9999999999 \n  6.SSR DOCS AA
HK1/P/USA/550009694/USA/05MAY74/M/23NOV27/NUNEZ\n      /JOHN///S1\n
7.SSR DOCA AA HK1/R/US\n  8.SSR DOCA AA HK1/D/US/14475 SW 23RD
TERRACE/MIAMI/FL/33175\nREMARKS\n  1.H-IPNADDR172.17.111.242\n
2.H-/OSO¿03JUN14\n  3.H-/OSO¿DLY¿INTL¿03JUN\n  4.H-PC/SECURITY
CHECK IN PROCESS DO NOT BOARD/CORPORATE SECUR\n
ITY/01\nRECEIVED FROM - WWW¿SINGLEUI\nHDQ.HDQ5ETP 0436/30MAY22
QTMOOV H"
```

07/08/2022

# Detail Note

## Event ID: 220601052

### Passenger List (G*L../ON)

Created: 6/3/2022 20:46   De La Hoz, Nick      Updated: 6/3/2022 20:46      De La Hoz, Nick

```
AA  1124 03JUN     BAQ        640P  319 ON LIST       C8Y104
 1  ███████████         AC3  I  MIA  1A-F  2 SC ET LF PTPH
068.                                        PTEM DOCV CLUB AG
                                            OK CM

        ON- 03JUN2022 1531
 2  ███████████         AC3  I  MIA  1C-F  2 SC ET LF PTPH
066                                         PTEM DOCV CLUB AG
                                            OK CM

        ON- 03JUN2022 1531
 3  ███████████         AC3  I  MIA  1D-F NB SC ET LF PTPH
067                                         PTEM DOCV CLUB AD
                                            OK CM WCHR

        ON- 03JUN2022 1531
 4  ███████████              I  MIA  1F-F  2 SC ET LF OB
098                                         DOCV CLUB OK CM
                                            WCHR

        ON- 03JUN2022 1533
 5  ███████████              R  MIA  2A-F  1 SC ET LF RCK
021                                         ADOC OB PTPH PTEM
                                            DOCV CLUB AD HCLR
                                            OK CM

        ON- 03JUN2022 1532
 6  ███████████              R  MIA  2C-F  2 SC ET LF OB
046                                         PTPH PTEM DOCV CLUB
                                            OK CM

        ON- 03JUN2022 1532
 7  ███████████              R  MIA  2D-F  2 SC ET LF RCK
008                                         ADOC PTPH PTEM DOCV
                                            CLUB AD HCLR OK
                                            CM

        ON- 03JUN2022 1532
 8  ███████████              C  MIA  2F-F NB SC ET LF PTPH
085                                         PTEM DOCV CLUB EP
                                            OK CM

        ON- 03JUN2022 1532
 9  ███████████              S  MIA  8B-F  1 SC ET LF PTPH
091                                         PTEM DOCV PRCH GRPO
                                            OK CM

        ON- 03JUN2022 1536
10  ███████████              N  MIA  8C-F NB SC ET LF RCK
001                                         ADOC PTPH PTEM DOCV
                                            ADM PCC CLUB EP
                                            HCLR OK CM

        ON- 03JUN2022 1532
11  ███████████              G  MIA  8D-F NB SC ET LF RCK
011                                         ADOC PTPH PTEM DOCV
                                            PCC AG HCLR OK
                                            CM

        ON- 03JUN2022 1532
12  ███████████              O  MIA  8E-F  3 SC ET LF OB
044                                         PTPH PTEM DOCV HCLR
                                            OK CM WCHR

        ON- 03JUN2022 1533
13  ███████████        BA2  S  MIA  8F-F  2 SC ET LF PTPH
090                                         PTEM DOCV PRCH GRPO
                                            OK CM INF DCVI
                                            IFET

        ON- 03JUN2022 1531
14  ███████████              S  MIA  9A-F  1 SC ET LF ADOC
088                                         OB PTPH PTEM DOCV
                                            ADM CLUB EP HCLR
                                            OK CM

        ON- 03JUN2022 1532
15  ███████████              B  MIA  9B-F  1 SC ET LF DOCV
056                                         BESH OK CM WCHR

        ON- 03JUN2022 1534
16  ███████████              L  MIA  9C-F NB SC ET LF RCK
```

07/08/2022

# Detail Note

## Event ID: 220601052

049
                                  ADOC OB PTPH PTEM
                                  DOCV GRPO AD HCLR
                                  OK CM

17    ON- 03JUN2022  1531    S   MIA  9D-F NB  SC ET LF RCK
014  ███████  ████████                      ADOC PTPH PTEM DOCV
                                    BESH AG HCLR OK
                                  CM

07/08/2022

# Detail Note

## Event ID: 220601052

## Passenger List (G*L../ON)

Created: 6/3/2022 20:46     De La Hoz, Nick          Updated: 6/3/2022 20:46     De La Hoz, Nick

| # | | ON- | 03JUN2022 | 1547 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 023 | ██████ ███ | | | | B | MIA | 9E-F | 2 | SC ET LF OB DOCV BESH PRCH OK CM |
| 19 051 | ██████ ███ | ON- | 03JUN2022 | 1533 | N | MIA | 9F-F | 1 | SC ET LF DOCV OK CM WCHR |
| 20 040 | ██████ ███ | ON- | 03JUN2022 | 1533 | Q | MIA | 10A-F | 1 | SC ET LF OB PTPH PTEM DOCV OK CM WCHR |
| 21 026 | ████ ██████ | ON- | 03JUN2022 | 1532 | N | MIA | 10B-F | 1 | SC ET LF OB PTPH PTEM DOCV OK CM WCHR |
| 22 027 | ████ ████ ███ | ON- | 03JUN2022 | 1533 | N | MIA | 10C-F | 1 | SC ET LF OB PTPH PTEM DOCV OK CM WCHR |
| 23 007 | ████ ██████ | ON- | 03JUN2022 | 1533 | O | MIA | 10D-F | 1 | SC ET LF RCK ADOC OB PTPH PTEM ADM CLUB EP HCLR OK CM |
| 24 080 | ████ ██████ | ON- | 03JUN2022 | 1531 | B | MIA | 10E-F | 1 | SC ET LF OB PTPH PTEM DOCV BESH OK CM |
| 25 060 | ████ ████ | ON- | 03JUN2022 | 1534 | N | MIA | 10F-F | 2 | SC ET LF ADOC PTPH PTEM DOCV HCLR OK CM WCHR |
| 26 073 | ████ ████ | ON- | 03JUN2022 | 1533 AG3 | V | MIA | 11A-F | 1 | SC ET LF PTPH PTEM DOCV PCC BESH AG NOEX PRGD OK CM |
| 27 076 | ████ ████ | ON- | 03JUN2022 | 1531 AG3 | V | MIA | 11B-F | NB | SC ET LF PTPH PTEM DOCV BESH PRGD CHD OK CM |
| 28 081 | ██████ ██████ | ON- | 03JUN2022 | 1531 AG3 | V | MIA | 11C-F | NB | SC ET LF PTPH PTEM DOCV BESH PRGD CHD OK CM |
| 29 103 | ████ ████ | ON- | 03JUN2022 | 1531 AW2 | N | MIA | 11D-F | 1 | SC ET LF OB PTPH PTEM DOCV HCLR OK CM WCHR |
| 30 104 | ████ ████ | ON- | 03JUN2022 | 1533 AW2 | N | MIA | 11E-F | 1 | SC ET LF OB PTPH PTEM DOCV HCLR OK CM |
| 31 006 | ████ ████ | ON- | 03JUN2022 | 1533 | M | MIA | 11F-F | NB | SC ET LF RCK ADOC PTPH PTEM DOCV PRCH AD HCLR OK CM |
| 32 009 | ████ ████ | ON- | 03JUN2022 | 1531 | Q | MIA | 12A-F | 1 | SC ET LF RCK ADOC OB PTPH PTEM DOCV HCLR OK CM |
| 33 010 | ███ ██ ████ | ON- | 03JUN2022 | 1532 | S | MIA | 12B-F | 1 | SC ET LF RCK ADOC PTPH PTEM DOCV HCLR OK CM |
| | | ON- | 03JUN2022 | 1533 | | | | | |

# Detail Note

## Event ID: 220601052



```
34          ████████  ███████      N    MIA 12C-F  2  SC ET LF DOCV
107                                                    OK CM WCHR
        ON- 03JUN2022  1533
35          ████████████████       S    MIA 12D-F  1  SC ET LF DOCV
099                                                    AD OK CM WCHR
        ON- 03JUN2022  1531
36          ██████ ██ ██████  AE2  N    MIA 12E-F  2  SC ET LF ADOC
086                                                    PTPH PTEM DOCV HCLR
                                                       OK CM WCHR
        ON- 03JUN2022  1533
```

# Detail Note

## Event ID: 220601052

## Passenger List (G*L../ON)

Created: 6/3/2022 20:46    De La Hoz, Nick        Updated: 6/3/2022 20:46    De La Hoz, Nick

| # | | Seat | Info | |
|---|---|---|---|---|
| 37 084 | ██ ██ ██ AE2 | N | MIA 12F-F | 2 SC ET LF ADOC PTPH PTEM DOCV HCLR OK CM WCHR |
| 38 070 | ON- 03JUN2022 1533 ██ | V | MIA 13A-F | NB SC ET LF DOCV AD CM |
| 39 069 | ON- 03JUN2022 1531 ██ ██ ██ | V | MIA 13B-F | NB SC ET LF DOCV AD CM |
| 40 017 | ON- 03JUN2022 1531 ██ ██ ██ | L | MIA 13C-F | 1 SC ET LF RCK ADOC OB PTPH PTEM DOCV AD HCLR OK CM |
| 41 033 | ON- 03JUN2022 1531 ██ ██ | Q | MIA 13D-F | 1 SC ET LF DOCV CM |
| 42 025 | ON- 03JUN2022 1531 ██ ██ AF2 | N | MIA 13E-F | 1 SC ET LF PTPH PTEM DOCV CM WCHR |
| 43 024 | ON- 03JUN2022 1531 ██ ██ AF2 | N | MIA 13F-F | NB SC ET LF PTPH PTEM DOCV CM WCHR |
| 44 100 | ON- 03JUN2022 1531 ██ ██ ██ | B | MIA 14A-F | NB SC ET LF OB DOCV BESH CM |
| 45 113 | ON- 03JUN2022 1533 ██ ██ | N | MIA 14D-F | 1 SC ET LF OB DOCV CM |
| 46 114 | ON- 03JUN2022 1534 ██ ██ | B | MIA 14E-F | 1 SC ET LF PTPH PTEM DOCV PCC BESH GRPO AD CCM OK CM |
| 47 112 | ON- 03JUN2022 1540 ██ ██ ██ | L | MIA 14F-F | 2 SC ET LF DOCV OK CM |
| 48 055 | ON- 03JUN2022 1536 ██ ██ ██ | B | MIA 15A-F | 1 SC ET LF PTPH PTEM DOCV BESH OK CM |
| 49 108 | ON- 03JUN2022 1533 ██ ██ | S | MIA 15C-F | 2 SC ET LF OB PTPH PTEM DOCV PRCH OK CM WCHR |
| 50 043 | ON- 03JUN2022 1533 ██ ██ ██ ██ AX2 | B | MIA 15D-F | 1 SC ET LF DOCV BESH OK CM |
| 51 045 | ON- 03JUN2022 1536 ██ ██ AX2 | B | MIA 15E-F | 2 SC ET LF DOCV BESH OK CM |
| 52 047 | ON- 03JUN2022 1536 ██ ██ | B | MIA 15F-F | 1 SC ET LF DOCV BESH OK CM |
| 53 028 | ON- 03JUN2022 1533 ██ ██ ██ | B | MIA 16A-F | 1 SC ET LF OB DOCV BESH HCLR OK CM |
| 54 050 | ON- 03JUN2022 1533 HABIB      REBEC | V | MIA 16C-F | 1 SC ET LF PTPH PTEM DOCV OK CM WCHR |
| 55 097 | ON- 03JUN2022 1532 ██ | Q | MIA 16D-F | 1 SC ET LF PTPH PTEM DOCV OK CM |
| 56 | ON- 03JUN2022 1534 ██ ██ | N | MIA 16F-F | 3 SC ET LF OB |

**Detail Note**

**Event ID: 220601052**



```
071                                    DOCV CM
        ON- 03JUN2022  1530
57  ████████   ██████    AV2  V   MIA 17A-F  1 SC ET LF OB
093                                    DOCV OK CM
        ON- 03JUN2022  1532
58  ████████   ██████    AV2  V   MIA 17B-F  1 SC ET LF OB
094                                    DOCV OK CM
        ON- 03JUN2022  1532
59  ████████  ██████      B   MIA 17D-F  2 SC ET LF DOCV
096                                    BESH OK CM WCHR
        ON- 03JUN2022  1533
60  ████████  ██████      B   MIA 17F-F  2 SC ET LF PTPH
```

# Detail Note

## Event ID: 220601052

## Passenger List (G*L../ON)

Created: 6/3/2022 20:46    De La Hoz, Nick        Updated: 6/3/2022 20:46    De La Hoz, Nick

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 110 | | | | | | PTEM DOCV BESH OK CM | |
| 61 032 | ON- 03JUN2022 1534 | AL4 Q | MIA 18A-F | 1 | SC ET LF PTPH PTEM DOCV HCLR CM | |
| 62 031 | ON- 03JUN2022 1532 | AL4 Q | MIA 18B-F | 1 | SC ET LF PTPH PTEM DOCV HCLR CM | |
| 63 029 | ON- 03JUN2022 1532 | AL4 Q | MIA 18C-F | 1 | SC ET LF PTPH PTEM DOCV HCLR CM | |
| 64 030 | ON- 03JUN2022 1530 | AL4 Q | MIA 18D-F | 1 | SC ET LF PTPH PTEM DOCV HCLR CM | |
| 65 019 | ON- 03JUN2022 1530 | V | MIA 18F-F | NB | SC ET LF RCK ADOC PTPH PTEM DOCV HCLR OK CM | |
| 66 102 | ON- 03JUN2022 1531 | B | MIA 19A-F | 1 | SC ET LF ADOC OB PTPH PTEM DOCV BESH HCLR CM | |
| 67 101 | ON- 03JUN2022 1534 | B | MIA 19C-F | 2 | SC ET LF OB DOCV BESH PRCH CM | |
| 68 065 | ON- 03JUN2022 1533 | BC3 B | MIA 19D-F | NB | SC ET LF PTPH PTEM DOCV BESH OK CM | |
| 69 063 | ON- 03JUN2022 1531 | BC3 B | MIA 19E-F | NB | SC ET LF PTPH PTEM DOCV BESH OK CM | |
| 70 064 | ON- 03JUN2022 1530 | BC3 B | MIA 19F-F | NB | SC ET LF PTPH PTEM DOCV BESH OK CM | |
| 71 089 | ON- 03JUN2022 1530 | N | MIA 20A-F | 2 | SC ET LF OB PTPH PTEM DOCV OK CM | |
| 72 059 | ON- 03JUN2022 1535 | AO2 Q | MIA 20B-F | 1 | SC ET LF OB PTPH PTEM DOCV PCC GRPO AD CCM OK CM WCHR | |
| 73 058 | ON- 03JUN2022 1532 | AO2 Q | MIA 20C-F | 1 | SC ET LF OB PTPH PTEM DOCV GRPO AD OK CM WCHR | |
| 74 004 | ON- 03JUN2022 1533 | N | MIA 20D-F | 1 | SC ET LF RCK ADOC OB PTPH PTEM DOCV HCLR OK CM | |
| 75 074 | ON- 03JUN2022 1531 | AU2 V | MIA 20E-F | 1 | SC ET LF PTPH PTEM DOCV OK CM | |
| 76 075 | ON- 03JUN2022 1534 | AU2 V | MIA 20F-F | NB | SC ET LF PTPH PTEM DOCV OK CM | |
| 77 079 | ON- 03JUN2022 1534 | AT2 S | MIA 21A-F | 2 | SC ET LF ADOC OB PTPH PTEM DOCV HCLR CM | |
| 78 078 | ON- 03JUN2022 1534 | AT2 S | MIA 21B-F | 2 | SC ET LF ADOC OB PTPH PTEM DOCV | |

07/08/2022

# Detail Note

## Event ID: 220601052

HCLR CM



| 79 095 | ON- 03JUN2022 | 1534 | N | MIA 21C-F | 1 SC ET LF PTPH PTEM DOCV CM |
| 80 105 | ON- 03JUN2022 | 1530 AN2 | N | MIA 21D-F | 1 SC ET LF OB PTPH PTEM DOCV NOEX CM |
| 81 | ON- 03JUN2022 | 1534 AN2 | N | MIA 21E-F | 1 SC ET LF OB |

07/08/2022

# Detail Note

## Event ID: 220601052

### Passenger List (G*L../ON)

Created: 6/3/2022 20:46    De La Hoz, Nick          Updated: 6/3/2022 20:46    De La Hoz, Nick

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 106 | | | | | PTPH PTEM DOCV CHD CM | | |
| 82 109 | ON- 03JUN2022 | 1534 ▮▮▮ N | MIA 21F-F | 2 | SC ET LF OB PTPH PTEM DOCV CM | | |
| 83 005 | ON- 03JUN2022 | 1534 ▮▮▮ Y | MIA 22A-E | 2 | SC ET LF PTPH PTEM DOCV OK CM | | |
| 84 052 | ON- 03JUN2022 | 1531 AQ2 S | MIA 22B-F | 1 | SC ET LF ADOC PTPH PTEM DOCV HCLR OK CM | | |
| 85 054 | ON- 03JUN2022 | 1530 AQ2 S | MIA 22C-F | 1 | SC ET LF ADOC PTPH PTEM DOCV HCLR OK CM | | |
| 86 053 | ON- 03JUN2022 | 1530 O | MIA 22D-F | 1 | SC ET LF PTPH PTEM DOCV CM | | |
| 87 048 | ON- 03JUN2022 | 1530 S | MIA 22E-F | 2 | SC ET LF OB PTPH PTEM DOCV CM | | |
| 88 018 | ON- 03JUN2022 | 1531 S | MIA 22F-F | 2 | SC ET LF RCK ADOC OB PTPH PTEM DOCV HCLR OK CM | | |
| 89 039 | ON- 03JUN2022 | 1533 B | MIA 23A-F | 1 | SC ET LF PTPH PTEM DOCV BESH CM | | |
| 90 020 | ON- 03JUN2022 | 1534 V | MIA 23B-F NB | | SC ET LF RCK ADOC PTPH PTEM DOCV PCC GRPO AD CCM HCLR OK CM | | |
| 91 077 | ON- 03JUN2022 | 1531 T | MIA 23C-F | 1 | SC ET LF OB PTPH PTEM DOCV PCC GRPO AD CCM HCLR CM | | |
| 92 012 | ON- 03JUN2022 | 1531 BD2 Y | MIA 23D-E | 1 | SC ET LF PTPH PTEM DOCV CM | | |
| 93 111 | ON- 03JUN2022 | 1531 L | MIA 23E-F | 1 | SC ET LF PTPH PTEM DOCV HCLR OK CM | | |
| 94 013 | ON- 03JUN2022 | 1540 BD2 Y | MIA 23F-E | 1 | SC ET LF PTPH PTEM DOCV CM | | |
| 95 092 | ON- 03JUN2022 | 1531 B | MIA 24A-F | 1 | SC ET LF OB PTPH PTEM DOCV BESH HCLR CM | | |
| 96 057 | ON- 03JUN2022 | 1531 L | MIA 24B-F | 1 | SC ET LF PTPH PTEM DOCV CM | | |
| 97 003 | ON- 03JUN2022 | 1532 AY2 S | MIA 24C-F | 1 | SC ET LF RCK ADOC PTPH PTEM DOCV AD PRAC HCLR OK CM | | |
| 98 002 | ON- 03JUN2022 | 1532 AY2 S | MIA 24D-F | 1 | SC ET LF RCK ADOC PTPH PTEM DOCV ADM PCC CLUB AD PRAC CEX HCLR OK CM | | |

# Detail Note

## Event ID: 220601052

```
99      ON- 03JUN2022 1532
087     ██████  ██████  AJ2  B   MIA 24E-F NB SC ET LF PTPH
                                          PTEM DOCV BESH HCLR
                                          CM

100     ON- 03JUN2022 1535
082     ██████  ██████  AJ2  B   MIA 24F-F  1 SC ET LF PTPH
                                          PTEM DOCV BESH HCLR


022                                       ADOC OB PTPH PTEM
                                          DOCV HCLR OK CM

102     ON- 03JUN2022 1531
016     ▪      ██████         V   MIA 25B-F  1 SC ET LF RCK
                                          ADOC OB PTPH PTEM
                                          DOCV HCLR OK CM

103     ON- 03JUN2022 1538
037     ██████  ██████        N   MIA 25C-F  1 SC ET LF PTPH
                                          PTEM DOCV HCLR CM

104     ON- 03JUN2022 1530
072     ██████████  ██████    G   MIA 25D-F  1 SC ET LF ADOC
                                          PTPH PTEM DOCV HCLR
                                          CM

105     ON- 03JUN2022 1534
042     ██████  ██████  AH2  B   MIA 25E-F  1 SC ET LF PTPH
                                          PTEM DOCV BESH NOEX
                                          CM

106     ON- 03JUN2022 1532
041     ██████          AH2  B   MIA 25F-F NB SC ET LF PTPH
                                          PTEM DOCV BESH CHD
                                          CM

107     ON- 03JUN2022 1532
034     ██████  ██████  AS3  B   MIA 26A-F  1 SC ET LF OB
                                          PTPH PTEM DOCV BESH
                                          AD NOEX PRGF OK
                                          CM

108     ON- 03JUN2022 1533
035     ██████  ██████  AS3  B   MIA 26B-F  1 SC ET LF OB
                                          PTPH PTEM DOCV BESH
                                          AD PRGF OK CM

109     ON- 03JUN2022 1532
036     ██████  ██████  AS3  B   MIA 26C-F NB SC ET LF OB
                                          PTPH PTEM DOCV BESH
                                          AD NOEX PRGF OK
                                          CM

110     ON- 03JUN2022 1532
038     ██████████  ██████    B   MIA 26D-F  1 SC ET LF PTPH
                                          PTEM DOCV BESH CM

111     ON- 03JUN2022 1532
062     ██████████  ██████ AM2  B   MIA 26E-F  2 SC ET LF PTPH
                                          PTEM DOCV BESH NOEX
                                          CM

112     ON- 03JUN2022 1534
061     ██████████  ██████ AM2  B   MIA 26F-F NB SC ET LF PTPH
                                          PTEM DOCV BESH CHD
                                          CM

        ON- 03JUN2022 1534
```

Flight 1124 03JUN  RFI 2034 CA report

| Event Factors | JAB/HL | Attachments | Activity |
|---|---|---|---|

| Created by Jaffe, Byron on 06/03/2022 23:18 | ? | Modified by Jaffe, Byron on 06/03/2022 23:18 |
|---|---|---|

200 miles north of departure station- #1 FA called and notified us of a
disruptive passenger in seat 17C.We followed guidance in FOM for disruptive
passenger - Threat LevelEvaluated the information provided from the FA's
and determined was a Threat Level 2.We returned back to our departure
station and removed passenger



**U.S. Department
of Transportation
Federal Aviation
Administration**

Special Emphasis Enforcement Program    Email: FS05-SEEP@faa.gov

August 1, 2022

FEDEX-TRACKING ID 777542721383  – SIGNATURE REQUIRED and FIRST CLASS
REGULAR MAIL

Mr. John Nunez
14475 SW 23rd Terrance
Miami, FL 33175

Subject: EIR:  2022FS050509

Dear Mr. John Nunez:

This letter is to inform you that personnel of the Federal Aviation Administration are
investigating an incident that occurred on 06/03/2022 aboard American Airlines #1124 from
Barranquilla, Columbia (BAQ) to Miami, Florida (MIA).  Records indicate you were a passenger
on that flight. According to information submitted to this office, you appeared intoxicated and
became irate when you were asked to use the main cabin lavatory due to the first class lavatory
was occupied. You became confrontational, screaming/yelling at the crew, after being denied
alcohol.  You would not follow instructions to remain seated.  The captain declared a passenger
disturbance and returned the aircraft back to Barranquilla, Columbia (BAQ).

These actions may have been contrary to Federal Aviation Regulations, and enforcement action
may be taken against you.

We wish to offer you an opportunity to submit a written statement within ten (10) days of
receipt of this letter. Your statement should contain all pertinent facts and any extenuating
or mitigating circumstances you believe have a bearing on this matter. Your response
should be sent via e-mail to FS05-SEEP@faa.gov with the following information in the
subject line: "Attn: Ronny Moon – EIR 2022FS050509". If we do not hear from you within
the specified time, we will process this report without the benefit of your statement.

Sincerely,

**RONNY G
MOON**   Digitally signed by
RONNY G MOON
Date: 2022.08.02
07:39:19 -05'00'

Ronny Moon
Aviation Safety Inspector

Enclosure
Privacy Act Notice

*Privacy Act Notice*

*This notice is provided in accordance with Section (e) (3) of the Privacy Act, 5 U.S.C. Section 552 a (e)(3), and concerns the information requested in the correspondence or form with which this notice is enclosed.*

A. *Authority: This information is solicited pursuant to 49 U.S.C. § 40113(a) and the regulations issued under that statutory provision codified in 14 CFR part 13, Investigative and Enforcement Procedures.*

B. *Principal purposes:*

*1. The request for information is intended to provide you with an opportunity to participate in the investigation of an apparent deviation from the Federal Aviation Regulations, or pertinent statutes, standards, or procedures.*

*2. The requested information will be used to help determine the root cause(s) of the subject event, identify safety concerns, determine whether or not there has been a deviation from the Federal Aviation Regulations or pertinent statutes, standards, or procedures, and what, if any, action should be taken. The requested information will be used for safety risk assessment and risk mitigation, and for finding and fixing safety issues in the National Airspace System (NAS).*

C. *Routine uses: Records from this system of records may be disclosed in accordance with the routine uses that appear in Department of Transportation (DOT)/FAA 847, Aviation Records on Individuals (current edition), available at https://www.transportation.gov/individuals/privacy/privacy-act-system-records-notices.*

D. *Effect of failure to respond: Submission of information is voluntary. The FAA cannot impose any penalties upon you if you choose not to respond to this information request. If you choose not to respond, however, the FAA will make determinations about possible action for this matter without the benefit of your comments.*

**Moon, Ronny G (FAA)**

| | |
|---|---|
| **From:** | 9-AVS-FS05-SEEP (FAA) |
| **Sent:** | Thursday, August 4, 2022 1:04 PM |
| **To:** | Moon, Ronny G (FAA) |
| **Subject:** | FW: EIR: 2022FS050509 |
| **Attachments:** | RESULTADOS NUNEZ JOHN 22-07-2022.pdf |
| | |
| **Importance:** | High |

---

**From:** From the Office of John Nunez <aveezy16@gmail.com>
**Sent:** Thursday, August 4, 2022 10:25 AM
**To:** 9-AVS-FS05-SEEP (FAA) <FS05-SEEP@faa.gov>
**Subject:** EIR: 2022FS050509
**Importance:** High

To whom it may concern,

My name is John Nuñez my Aadvantage Platium Executive number is 8N27WA4.  I am the son of Alfredo Nuñez employee number #011680.  I was flying as a D3 passenger on the flight in question.  I would like to apologize first and foremost to all the individuals involved.  I have been flying "NON-REV" aka as NON-REVENUE passenger, all may life, and I understood that this is a "privilege" and not "Right", with that being said **I deny any and every allegation made by the flight attendants.**

I know these are some serious allegations aboard a commercial aircraft in flight.  But i am armed with the proof from other passengers as witness, and a NEGATIVE field sobriety test at my request that was given to me by the Colombian national police.  I was not intoxicated, I was in pain from Kidney Stones and BPH which is an enlarged prostate.  I needed to go to the bathroom to avoid urinating on myself.

Before I go into the details of this unfortunate ordeal I would like to appeal to you on a personal level.  If you review my travel history you can clearly see that I have flown that same route nearly monthly for almost 5 years and I have NEVER had an incident.  As a revenue passenger, I know I have a choice and my loyalty has always been to American Airlines.  I

1

fly to Barranquilla every month to see my son who lives there and on the date in question I was returning from my usual visits, and typically I usually fly as a revenue passenger but on this occasion I didn't.  I understand we are living in some difficult times and everyone is on edge.  I will try my best to recount the situation and I hope that i'm given the benefit of the doubt and be treated fairly.

If you look at my travel history under AADVANTAGE #8N27WA4 you can clearly see that I usually fly business class, but unfortunately the flight was pretty packed and I just decided to use a D3 pass.

Flight #1124 which I have flown countless time was delayed about two hours that day, and about an hour into the flight I rang the bell to ask the flight attendant for a coke to take some medication, when the FA came over she rudely responded to me with "You are a D3 and you know you can't be asking for anything!"  I was appalled and embarrassed as i felt humiliated for being belittled in front of all the other passengers. and all I did was respond when then situation escalated.  I totally understand that I was on a commercial aircraft mid-flight and I understand how serious the situation is regarding "Unruly Passengers"  I also understand and sympathize that the FA's have a rough job and I understand they work under difficult conditions, but when is it not ok to receive verbal abuse?

After the 1st two times the FA's disrespected me in front of the other passengers, I tried to show empathy and compassion to them but the third time my emotions got the best of me when one of the two FA's put her hands in my face and made contact with my nose.  Sadly, all this happened because I asked for something to drink so i could take my medication. The FA's were truly overzealous and overstepped their boundaries.  It is necessary for me to fly to Barranquilla and this unfortunate situation has disrupted my life.  I have a 4 year old son and I fly to barranquilla to see him, now I have to fly with another carry and start a new relationship, I lost my flight privileges and my executive status that I worked so hard to obtain.

I know it's my word against there's but I'm asking you to look at my travel history, why would i jeopardize my freedom, my life, and the ability to be a father?

I'm not looking to get anyone in trouble, but I want to be treated fairly.  When i appealed to them "that we are on the same team" they totally discounted that and kept disrespecting me, and when I said "had i bought my seat, you wouldn't have treated me like this!"  One of them put there hands in my face to silence me and that's when they got the captain to turn the plane around.  The captain was not witness to anything and it's my word against two people who had it in for me at that moment.

When the plane landed in barranquilla, I disembarked without incident and it was widely publicized that I menaced and threatened the crew.   When a tabloid reporter from Colombia recorded the incident without consent, violating my 4th amendment rights.

When I try to explain to the FA's that aside from being on the same team and that I was a platinum executive passenger she responded with "That doesn't mean crap here!"  When is this kind of abuse ok?

I was accused of being under the influence of alcohol but as soon as I disembarked I asked at my request that the authorities to administer a sobriety, because I was accused of being intoxicated and I wanted it to be on the record.

The test and when it was performed immediately after I reentered the country and  the result was **NEGATIVE.**  The authorities released me on my own recognizance and was informed that if they needed to corroborate my story they would to assist me in clearing my name.

The filming of the incident went viral and caused humiliation and cyber-bullying to my entire family.  We are all human and people have bad days and on this day everyone was on edge.  We had been delayed a couple of hours and there was definitely tension in the air.

I accept extreme ownership and any consequences that may follow.  I have already been contacted by corporate security that I have been banned permanently from flying with American Airlines.

I ask that you reconsider,  I tried to defuse the situation, I tried to show compassion and empathy, but I can't believe that I can be punished by someone who can just make up allegations and destroy my life just because the person was having a bad day.  I am a good person and if you were to interview any employee at the airport in Barranquilla, they can tell you that I go on about my business and I am a loyal customer and i consider them part of my family.

When the police interviewed me, they could not understand how all this escalated over a soft-drink, they found it to be unjustified and since I've had a rapport with them over the years, they felt no need to detain me or cause me any more inconvenience.  If you take the time interview any of the employees on the ground they can tell you that on flight 1124 or 1125 i'm on time, 1st in line and always willing to help the crew in any way.  I'm courteous to the pilots as i entrust my life to them, I always greet them with a respectful "good day skip, keep it straight"  we exchange pleasantries since we run into each other on occasion.

I truly don't know what to say or do regarding this matter, I'm a frequent flyer and I've flown with American my whole life.  It saddens me because I consider AA part of my family and my father god rest his soul must be turning over in his grave.

I know the chips are stacked against me, I know now I'm just a statistic, part of the 5500 some-odd cases of "unruly passengers" but let me assure you this should have never gone there, all i asked was for something to drink nothing more nothing less!


Do you really think tarnish my family's good name over something so meaningless?

I truly hope during your investigation you take into consideration the mental state of your FA's, historically they have been known to be rude to other employees and i've witnessed it for years. I totally empathize with them, they have a tough job with dealing with so many personalities day in and day out but when it is not ok for them to be rude and disrespectful, I wasn't even given the opportunity to defend myself.

Because the incident went viral, i've had to defend myself from the tabloids labeling me as "unruly" when you can see in the viral video that I was nothing but cooperative. I tried to explain to the captain and he just dismissed me.

I truly feel that your FA's abused their power and authority talking to me in an unprofessional and belittling manner, and all i did was stand up for myself and ask that they respect me. I also wanted to mention that I was dealing with Kidney stones & and enlarged prostate and that condition causes pain and discomfort that caused me to frequently urinate.

Attached are my medical records to attest to my medical condition.   I hope this could shed the light on me having to request the lavatory.

I want to put this matter behind me, I would like an opportunity to redeem myself or an forum to defend myself properly. Those FA's took my life in their hands and destroyed it by slandering me and defaming my character. I don't condone any of this, and it was unfortunate and at the end of the day I just need peace and to put this to bed. If i am to be banned, please just ban me but not my family, they had nothing to do with this. I reiterate that I understand fully that this is a right and not a privilege and I accept extreme ownership of the situation, but if I'm to be banned, I kindly ask that you train your FA's in the ways of the "new normal" We are all human and I'm a man of god, I forgive them for assaulting and humiliating me.

I hope you can find it your hearts to chalk this up as misunderstanding and that I be foregiven too!

I apoligize for the late response, this letter was just brought to my attention today. Below is footage from the viral video. you can clearly see i disembarked without incident and cooperated fully with everyone. Your FA's are human too and they are not perfect. They were rude and unprofessional and unfortunately they got the best of me, but no one has the right to put their hands on my body and especially touch my face. I don't know what this will amount too, but I all i ask is that my travel history be reviewed and you can clearly see that this was an isolated incident and something have to had triggered it, it cannot all fall on me.

I'm willing to cooperate in any way possible. please contact me at the numbers below if necessary. I sincerely apologize to my father, my family and all the passengers aboard. I ask that I'm treated fairly and that i be given the proper forum and opportunity to defend myself. I don't wan't anything more than to be treated fairly as a man and as a human being. Thank you for the opportunity to tell my side of the story. What ever the outcome is, I will accept it but I just ask that you take everything I have said into consideration and that we just put this unfortunate incident behind us.I finished reviewing the allegations and they are frivolous and erroneous. Your FA's were overzealous and disrespectful as I mentioned.  In page two of these slanderous and defamatory accusations, I was not fined because they could not find a reason to fine me, Had I made all the threats and menacing I'm being accused of, I would have been denied entry to the country and the police would have taken me into custody. They just bold face lied, they told the world that I was under the influence of alcohol, I was not. I was just in pain and I needed something to drink and to use the bathroom because of my condition. The flight attendants made a mountain out of mole hill and I've seen in my travels many times passengers use the 1st/business class lavatories. I never not complied with any rules on the contrary this situation escalated because of the blatant disrespect and belittling that I encountered at the hands of your employees. Once again I kindly ask that

you review my travel history and ask yourselves an honest question, why would I do this? Your employees are not infallible and not perfect. They have a tough job as it is, but believe me, I Had to get to miami that day and so did everyone else on that flight, but how can I prove my innocence when it's my word against two clearly overzealous employees, it's my word against theirs. I wasn't arrested, sanctioned fined or prosecuted, I feel I was unjustly accused only because I chose to stand up for myself and I couldn't tolerate the disrespect after a 3rd time,

I tried to explain my situation but since I was a d3 employee, I was treated like persona non-grata. I had no issues with immigration and customs, those are all bold face lies. The video clearly shows that I'm laughing from the absurdity and ridiculousness of it all. I don't understand why the plane was returned to Colombia, all I said was that I would have been treated differently had I been on a revenue passenger! And I can't remember which one of the two who struck me on the nose, but neither of them had the right to put their hands on me, there was video footage of it all, I did not pose any threat and I would have never done that. I'm a 48 year old investment banker, with two businesses and a family. I have no criminal record besides a traffic infraction in my youth but you can you review my flight history, I have logged many miles without incident and to be accused of threatening or menacing anyone is simply ridiculous.

If you need any information from the national police they captain on charge at the airport is willing to go on the record and corroborate his findings, that this was a simple misunderstanding over a soft drink and tempers flared. On my honor, I tried to defuse the situation but they are not being truthful in their accusations and If I had done that, legally this would be clearly be a different matter. In situations like this people do not have a moral compass and they were drunk with power and overstepped their boundaries. I only ask to that you ask this one question....Why did this happen?

PLEASE CONFIRM RECIEPT OF THIS COMMUNICATION,

https://www.infobae.com/america/colombia/2022/06/04/pasajero-en-estado-embriaguez-amenazo-a-tripulacion-de-vuelo-en-barranquilla/



**SABBAG RADIOLOGOS**

Nombre : **NUÑEZ JOHN**       Fecha : 2
N Ref : 609689-81              ID    : 5
Médico : ROBERTO ZAMBRANO GUERRA   Edad : 4

## UROTAC

**Técnica:**
Utilizando equipo de tomografía computada multidetector, obtuvimos imágenes axiale
fase simple. Realizamos reconstrucciones multiplanares. Se hizo uso de los elemer
personal, de acuerdo al protocolo establecido por la institución.

**Hallazgos:**
Riñón derecho: De forma, tamaño y densidad normal, no identificando lesiones sólid
parénquima. No hay dilatación de los sistemas colectores. Uréter de calibre y tr
observamos litiasis renal ni ureteral. Riñón izquierdo: De forma, tamaño y densidad norm
lesiones sólidas o quísticas en el parénquima. No hay dilatación de los sistemas colectore
y trayecto normal. Foco hiperdenso de 3.5 mm (392 UH) en grupo colector super
distendida, de pared regular y delgada. Próstata discretamente aumentada de tam
homogénea, a correlacionar con PSA. Vesículas seminales sin alteración. Lo visualizado o
es normal por este método. Vesícula biliar normal. Páncreas y adrenales de morfología
Gastrectomía parcial en manga, sin complicaciones. Resto del tracto gastrointest
distribución normal. Vena cava inferior y aorta de calibre normal. No hay adenomegalias
en el retroperitoneo. Espondilosis lumbar con discopatía en L4-L5 e hipertrofia facetar
blandos y estructuras óseas sin alteración.

## CONCLUSIÓN:

1. MICROLITIASIS RENAL IZQUIERDA AISLADA, NO OBSTRUCTIVA.

Página 1

**Laboratorio
Portoazul**

**auna**

Cra 28 Nro. 1B - 315 Tel: 57 (5) 3672600
www.clinicaportoazul.com

| | | | |
|---|---|---|---|
| Paciente: **NUNEZ   JOHN** | Identificación: **550009594** | Nro. Servicio: **7726307** | No. Paciente: **2111** |
| Sexo/Edad: **MASCULINO / 44 Años** | Teléfono: **17864251966** | Tipo servicio: | |
| Médico: **SIN REGISTRO MEDICO** | Fecha servicio: **22/07/2022** | Fecha impresión: **25/07/2022 02:46 PM** | |
| Empresa: **CLINICA PORTOAZUL S.A.** | | Habitación: **TOMA DE MUESTRAS** | |

## ANTIGENO ESPECIFICO DE PROSTATA   Validado: 22/07/2022 05:31 PM

| Análisis | Resultado | Valores de Referencia | | Unidad |
|---|---|---|---|---|
| Antigeno Prostático | 0.63 | 0 | 4.0 | ng/mL |
| Menores de 40 años | | Menor de 1.4 | | ng/ml |
| De 40 a 50 años | | Menor de 2.0 | | ng/ml |
| De 51 a 60 años | | Menor de 3.1 | | ng/ml |
| De 61 a 70 años | | Menor de 4.1 | | ng/ml |
| Mayores de 70 años | | Menor de 4.4 | | ng/ml |

Técnica: quimioluminiscencia
Valores de Referencia acordes con los recomendados
por la Asociación Americana de Urología (AUA)
Se considera recurrencia bioquimica de la
enfermedad, cuando los niveles séricos del PSA
superan los 0,4 ng/ml en ptes prostatectomizados

BACTERIOLOGA
**KAREN PATRICIA SARABIA SANCHEZ**
**REG.  25-4393-09-18-11-09**

Diagnóstico y Asistencia Médica SAS certifica el carácter técnico y científico de este documento y, responde íntegramente por su contenido

**Laboratorio**
**Portoazul**
**auna**

Cra 28 Nro. 1B - 315 Tel: 57 (5) 3672600
www.clinicaportoazul.com

| | | | |
|---|---|---|---|
| Paciente: **NUNEZ   JOHN** | Identificación: **550009594** | Nro. Servicio: **7726307** | No. Paciente: **2111** |
| Sexo/Edad: **MASCULINO / 44 Años** | Teléfono: **17864251966** | Tipo servicio: | |
| Médico: **SIN REGISTRO MEDICO** | Fecha servicio: **22/07/2022** | Fecha impresión: **25/07/2022 02:46 PM** | |
| Empresa: **CLINICA PORTOAZUL S.A.** | | Habitación: **TOMA DE MUESTRAS** | |

**UROCULTIVO CON RECUENTO DE COLONIAS**          Validado: 23/07/2022 03:14 PM

| Análisis | Resultado |
|---|---|
| RESULTADO | Patógenos urinarios no se aislaron después de 24 horas de incubación |
| ORIGEN DE LA MUESTRA | ORINA |
| UBICACION ANATOMICA | TRACTO GENITO URINARIO |

BACTERIOLOGO
**SAMIR ANDRES VILORIA ALTAMAR**
**REG.**

Diagnóstico y Asistencia Médica SAS certifica el carácter técnico y científico de este documento y, responde íntegramente por su contenido

**Laboratorio**
**Portoazul**

**auna**

Cra 28 Nro. 1B - 315 Tel: 57 (5) 3672600
www.clinicaportoazul.com

| | | | |
|---|---|---|---|
| Paciente: NUÑEZ   JOHN | Identificación: 550009594 | Nro. Servicio: 7726307 | No. Paciente: 2111 |
| Sexo/Edad: MASCULINO / 44 Años | Teléfono: 17864251966 | Tipo servicio: | |
| Médico: SIN REGISTRO MEDICO | Fecha servicio: 22/07/2022 | Fecha impresión: 25/07/2022 02:46 PM | |
| Empresa: CLINICA PORTOAZUL S.A. | | Habitación: TOMA DE MUESTRAS | |

## PARCIAL DE ORINA, INCLUIDO SEDIMENTO    Validado: 22/07/2022 02:38 PM

| Análisis | Resultado | Valores de Referencia | | Unidad |
|---|---|---|---|---|

### FISICO QUIMICO

| | | | | |
|---|---|---|---|---|
| COLOR | Amarillo | Ambar a | Amarillo | |
| ASPECTO | LIG TURBIO | Transparente o | Límpido | |
| DENSIDAD | 1.025 | 1.005 | 1.030 | |
| PH | 6.0 | 5 | 6.5 | |
| PROTEINAS | 25 | NEGATIVO | | mg/dl |
| GLUCOSA | Negativo | NEGATIVO | | mg/dl |
| CUERPOS CETONICOS | 15 | NEGATIVO | | mg/dl |
| BILIRRUBINA | Negativo | NEGATIVO | | mg/dl |
| SANGRE | Negativo | NEGATIVO | | Ery/uL |
| NITRITOS | Negativo | NEGATIVO | | |
| UROBILINOGENO | Normal | 0.2 | 1.0 | mg/dl |
| LEUCOCITOS | Negativo | Negativos a | Menos 15/uL | Leu/uL |

### SEDIMENTO URINARIO

| | | | | |
|---|---|---|---|---|
| LEUCOCITOS | 0-2 XC | 0 a | 8 | Por AP |
| CELULAS EPITELIALES BAJAS | ESCASAS | NEGATIVAS | ESCASAS | Por AP |
| CRISTALES DE OXALATO DE CALCIO | ++ | Cantidad media en | Orinas ácidas | Por AP |
| MOCO | + | | | Por BP |
| BACTERIAS | ESCASAS | NEGATIVAS | | Por AP |

NOTA: Sangre en tirilla es mas sensible a hemoglo-
bina-mioglobina que a eritrocitos, ausencia de
hemólisis indica falsos negativos aunque sea posi-
tivo el sedimento urinario.

BACTERIOLOGA
**PATRICIA ESTHER BARROS TORRENEGRA**
**REG.  RM 533**

Diagnóstico y Asistencia Médica SAS certifica el carácter técnico y científico de este documento y, responde íntegramente por su contenido

Video Clip Of John Nunez

Open Hyperlink:

https://www.infobae.com/america/colombia/2022/06/04/pasajero-en-estado-embriaguez-amenazo-a-tripulacion-de-vuelo-en-barranquilla/

# ADDENDUM TO EIR

# **Complaint Record of Telephone Conversation**

Name:    Rebecca Habib (Seat 16C)
Call Attempt:   12/05/2022
Flight Number:  AALA# 1124
Time:
Route:  BAQ-MIA
Flight date:   06/03/2022
Airline:    American Airlines
Mailing Address:
Phone:   ███████████
Phase of flight of reported issue:
AMR Complaint #:   2022FS050509

Complaint topics:  Witness to Unruly Passenger Nunez

---

Today (12/05/2022), I spoke with Mrs. Rebecca Habib about a flight she was on
American Airlines # 1124 BAQ-MIA. She was witness to the behaviors of an Unruly
Passenger (John Nunez) on the flight. I asked Mrs. Habib if she remembered the flight
and passenger in question. She said, "Without a doubt I remember". She stated it was
the worst flight she has ever taken and that the behavior Mr. Nunez displayed was the
worst she has ever seen as well. I asked Mrs. Habib to give me her recollection of the
event. Mrs. Habib stated it all started before they even boarded with Mr. Nunez. She
said there was a weather delay due to a Hurricane in Miami. She stated that due to the
delay she decided to go to the VIP Room where they offer free food and free drinks for
frequent flyers. She said that is where she saw Mr. Nunez first. She said he was in the
VIP room for over 2 hours drinking multiple alcoholic drinks. She stated he was very
loud and using profanity in the VIP Room. He was arguing with the staff about
everything and he was extremely mean towards them. Mrs. Habib then went to the
Manager of the VIP Room to request he be removed from the room. He was annoying
several others. The Manager then stated she was unable to remove him because of his
Frequent Flyer Status and that he does this type of behavior every time he comes into the
VIP Room. At that point Mrs. Habib left the VIP Room because of his behavior. The
next time she saw Mr. Nunez was during boarding. When she took her seat at 16C, she
was shocked to see Mr. Nunez sitting directly behind her in seat 17C. She stated that we
was very loud and using profanity during the entire boarding process. She said that he
was arguing with the crew about serving him a drink during boarding. She said he was
very aggressive towards the crew and she felt sorry for them. After take-off, she said he
was still very agitated about the crew cursing loudly. He then got up and went to the
back of the aircraft where he began yelling at two of the flight attendants. She said she
did not know what he was yelling about, but was very loud and cursing. She said that all
of the passengers were scared by his behavior. About 10 minutes after the altercation, the
captain made a PA that they were going back to Columbia. She said that she thought it

was due to the hurricane weather in Miami. Once they were back at the gate Airport Personnel can onboard and removed him. I then asked if she knew the crew members that worked her flight and she said that was the first time she had ever met them. I thanked Mrs. Habib for her time and ended the call.

Ronny Moon
Aviation Safety
SEEP URP Task Force
FS05 – Special Emphasis Enforcement Program (SEEP)
American CMO
O- (214) 277-7775
C- (214) 534-6247
ronny.g.moon@faa.gov

# Exhibit B

**Title:** FOIA Response Letter – Case No. 2025-03358

**Description:**

This is the Federal Aviation Administration's official response dated June 18, 2025, to Plaintiff's FOIA Request No. 2025-03358. In this letter, the FAA affirms that it is withholding portions of the Enforcement Investigative Report (EIR) under FOIA Exemptions 5 (deliberative process privilege) and 6 (privacy).

**Relevance to this Case:**

This exhibit demonstrates the FAA's continued assertion of privilege and its refusal to disclose critical portions of the EIR. It provides the most current agency position on the withholding and constitutes the final agency action under FOIA, thereby establishing jurisdiction for judicial review under 5 U.S.C. § 552(a)(6)(C).

**Relation to Overlapping Related Case:**

The withheld portions of the EIR directly relate to factual findings that have been invoked by American Airlines in Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA. The FAA's refusal to provide an unredacted report, while allowing its findings to be functionally used in private litigation, compounds the due process concerns raised in both the FOIA and APA claims. This response letter therefore also impacts Plaintiff's ability to fairly litigate the related case.



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Chief Counsel

Aviation Litigation Division
Miramar Team
2895 SW 145th Avenue, Suite 120
Miramar, FL 33027

June 18, 2025

John Nunez
14475 SW 23rd Terrace
Miami, FL 33175

Dear Nunez:

Re:  Freedom of Information Act (FOIA) request (Request No. <u>2025-03358</u>)

This letter responds to your April 21, 2025, Freedom of Information Act (FOIA) request
for records relating to FAA Case 2022FS050509. Enclosed are copies of releasable
portions of the Enforcement Investigative Report, which were previously provided to you
on July 15, 2024. There are no fees associated with processing this request.

## I.   FOIA Exemption 5:

We are withholding information under Exemption 5 of the FOIA.  Exemption 5 allows
agencies to withhold recommendations, opinions, and analyses under the deliberative
process privilege. These constitute inter-agency and intra-agency communications, the
release of which would disclose the Government's deliberative process and could
adversely affect enforcement proceedings.

Allowing the release of these records would discourage open and frank discussions
between agency employees that are helpful in enforcement proceedings and create
confusion in cases where recommendations and opinions are not adopted. Exemption 5
may protect deliberative, pre-decisional materials, such as advice, opinions, and
recommendations rendered by agency staff when reaching a final determination or
position on any particular matter under agency consideration.

## II.   FOIA Exemption 6:

In some of the records, we have redacted the names, home addresses, telephone numbers,
emails, and dates of birth of the parties mentioned.

This information has been redacted and is being withheld from disclosure under
Exemption 6 of the FOIA. Exemption 6 of the FOIA protects information that pertains to
an individual "the disclosure of which would constitute a clearly unwarranted invasion of
personal privacy." 5 U.S.C. 552(b)(6). When applying Exemption 6, the FAA weighs an

individual's privacy interest against any public interest in the records. In the case of the redacted information, the FAA finds no public interest in the release of this information

The undersigned is responsible for this partial denial and has considered the foreseeable harm standard when reviewing these records and applying applicable FOIA exemption. You have the right to appeal this decision by writing the Assistant Administrator for Finance and Management (AFN-400), Federal Aviation Administration, 800 Independence Avenue, SW, Washington DC, 20591, or through electronic mail at FOIA-Appeals@faa.gov. Your appeal must be sent within 90 calendar days from the date of this letter. Please include all valid information and arguments relied upon along with the following: "*Enclosed is the submission of an appeal made under the FOIA number 2025-03358.*" The envelope containing the appeal should be marked "*FOIA Appeal.*"

A failure to file a timely administrative appeal may affect your rights with respect to this request.

You also have the right to seek assistance and/or dispute resolution services from the Federal Aviation Administration's FOIA Public Liaison (FPL) or the Office of Government Information Services (OGIS) with respect to this request. The FPL is responsible, among other duties, for assisting in the resolution of FOIA disputes within the Federal Aviation Administration. OGIS, which is outside the Federal Aviation Administration, offers ombuds services, including dispute resolution services between FOIA requesters and federal agencies, as a non-exclusive alternative to litigation. Please note that OGIS's assistance does not replace the administrative appeals process. Please note that contacting OGIS will not affect the deadline for submitting an administrative appeal.

You may contact the FAA FPL or OGIS at:

> FAA FOIA Public Liaison
> Telephone: (202) 267-7799
> Email: 7-AWA-ARC-FOIA@faa.gov

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, Maryland 20740-6001
> Email: ogis@nara.gov
> Telephone: (202) 741-5770 or toll free 1 (877) 684-6448
> Fax: (202) 741-5769

Sincerely,

Taneesha D. Marshall
Assistant Chief Counsel
 for Aviation Litigation

By:

*Kimberly R. Villiers*

Kimberly R. Villiers, Attorney
Aviation Litigation Division, Miramar Team
Office of the Chief Counsel
Federal Aviation Administration
2895 SW 145th Ave., Suite 120
Miramar, FL 33027
Mobile:  (202) 702-4697
E-mail: kimberly.villiers@faa.gov

# Exhibit C

## <u>Title: FOIA Appeal – Denial of Expedited Processing</u>

**Description:**

This document consists of the FAA's response to Plaintiff's FOIA Appeal No. 2088751, which includes a denial of expedited processing and a partial denial of the appeal itself. The appeal challenged the FAA's withholding of critical portions of the EIR and requested faster disclosure due to active litigation and the importance of the records.

**Relevance to this Case:**

This exhibit reinforces Plaintiff's assertion that the FAA has failed to provide meaningful access to material records in a timely and legally sufficient manner. It supports the claim that Plaintiff exhausted administrative remedies and that the agency's withholding was final, reviewable action. It also substantiates procedural injury under the Freedom of Information Act.

**Relation to Overlapping Related Case:**

Plaintiff sought expedited processing based on the relevance of the EIR to active litigation in Nu

U.S. Department
of Transportation

**Federal Aviation
Administration**

FOIA Program Management Division

800 Independence Avenue, SW
Washington, DC 20591

John Nunez
Nicholas AIR
300 S. Lamar Ct.
Oxford, MS 38655
johnnunez@ymail.com

**Subject**: Freedom of Information Act (FOIA) Request 2025-03358

Dear Mr. Nunez:

This letter acknowledges receipt of your FOIA request dated, April 18, 2025, seeking:

> "I am requesting a complete and unredacted (or less-redacted) copy of the Enforcement
> Investigative Report (EIR) pertaining to FAA Case No. 2022FS050509, in which I, John
> Nuñez, am the subject of investigation. The report I previously received is heavily
> redacted, omitting material critical to my ability to understand the FAA's reasoning and
> defend myself in a related federal civil matter.
>
> Specifically, I am requesting:

> 1.    The complete and unredacted EIR, including:
>
>   - Investigator Ronny Moon's full analysis, conclusions,
>     recommendations, and any internal comments, memos, or notes
>     contained within the EIR file.
>   - Any redacted sections previously withheld under Exemption 5
>     (deliberative process), as I am the subject of the enforcement and
>     currently engaged in legal proceedings where these records are
>     material.

> 2.    All supporting documentation and exhibits referenced in or attached to the
>    EIR, including:
>
>   - Cabin crew statements, summaries, or debrief notes from Flight
>     1124 (June 3, 2022).
>   - Any CERS (Cabin Event Report Summary), if it exists.
>   - Communications or coordination between FAA and American
>     Airlines regarding the classification or enforcement outcome.
>   - Internal FAA emails or memoranda discussing whether to pursue
>     enforcement, what level of threat was assigned, and how sanction
>     recommendations were made.

3.      Any and all passenger witness statements or records of interviews conducted by the FAA, as referenced in the EIR (particularly those regarding passengers seated in 17A/B or nearby rows).

4.      Any video, audio, or photographic evidence reviewed by the FAA as part of the enforcement process, including footage submitted by American Airlines or crew members.

Please ensure that this request includes any versions of the EIR or attachments not previously disclosed in my prior FOIA response, including those referenced but withheld under redactions."

Your request has been assigned to the following office for processing:

Office of the Chief Counsel                  Contact:  Martha Rumley
                                             martha.rumley@faa.gov

Should you wish to inquire as to the status of your request, please contact the assigned FOIA Coordinator. Please refer to the above referenced number on all future correspondence regarding this request.

Your request for expedited processing has been denied as you have not shown a compelling need based on imminent threat to life or physical safety to an individual, nor a particular urgency to inform the public of an actual or alleged Federal Aviation Administration activity beyond the public's right generally to know about Government activity. *See* 49 C.F.R. § 7.31(c).

The undersigned is responsible for this denial. If you have any additional questions or need assistance, you may contact the FAA FOIA Public Liaison directly at (202) 267-7799 or by email to 9-AFN-FOIA-Public-Liaison@faa.gov with "Public Liaison" in the subject line.

If you believe the outcome of this determination is incorrect, you must request reconsideration by email at FOIA-Appeals@faa.gov or by writing to:

Assistant Administrator for Finance and Management (AFN-1)
Federal Aviation Administration
800 Independence Avenue, SW
Washington, DC  20591

The appeal must be made in writing within 90 days from the date of receipt of this letter. The appeal letter, the envelope and the e-mail subject line should be clearly marked "FOIA Appeal." The request must also include your assigned FOIA control number.

Additionally, you may contact the National Archives and Records Administration's Office of Government Information Services (OGIS) to inquire about their FOIA mediation services. The contact information for OGIS is as follows:

National Archives and Records Administration
Office of Government Information Services
8601 Adelphi Road, Room 2510
College Park, Maryland 20740-6001
Phone: 202-741-5770, Toll-free: 1-877-684-6448
Facsimile: 202-741-5769
E-Mail: ogis@nara.gov

Sincerely,

SHERLITA Y. HAWKINS
Digitally signed by SHERLITA Y HAWKINS
Date: 2025.05.20 09:06:59 -04'00'

Sherlita Hawkins
Manager, Freedom of Information Act
Program Management Division, AFN-400

# Exhibit D

## Title: FOIA Submission Confirmation – FOIA.gov (Request ID: 2088751)

**Description:**

This document includes the submission confirmation for Plaintiff's FOIA request filed through the official FOIA.gov portal under Request ID 2088751. It reflects the scope of records requested, including the complete unredacted Enforcement Investigative Report and all supporting materials, and documents Plaintiff's request for expedited processing.

**Relevance to this Case:**

This exhibit establishes the timeliness, scope, and proper submission of Plaintiff's FOIA request. It confirms that the request was sufficiently detailed and filed through appropriate channels. It also supports Plaintiff's assertion of compliance with procedural requirements necessary to pursue judicial review under the Freedom of Information Act.

**Relation to Overlapping Related Case:**

The requested materials directly relate to the factual and evidentiary basis for claims and defenses in Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA. By showing that the FAA was informed of the litigation and requested expedited disclosure accordingly, this exhibit underscores the material importance of the withheld documents to Plaintiff's ability to present a complete and fair case in the related action.



An official website of the United States government
Here's how you know



# FOIA.gov

UNITED STATES DEPARTMENT *of* JUSTICE

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2088751

# Success!

## Your FOIA request has been created and is being sent to the Federal Aviation Administration.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

Sheree Deberry, Manager (Intake & Assignment Branch), Public Liaison

202-267-8492

sheree.l.deberry@faa.gov

Adrianne C. Blake, Manager (Disclosure & Appeals)

202-267-3593

adrianne.c.blake@faa.gov

Sherlia Hawkins, FOIA Officer/FOIA Program Manager
800 Independence Avenue, SW
Washington, DC 20591

# Request summary

Request submitted on **April 18, 2025**.

The confirmation ID for your request is **2088751**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

# Contact information

**Name**
JOHN NUNEZ

**Mailing address**
14475 SW 23rd terrace
miami, FL 33175
United States

**Phone number**
7864251966

**Email**
JOHNNUNEZ@YMAIL.COM

# Your request

FOIA Request – Full Enforcement Investigative Report (EIR) and All Supporting Materials Related to Case No. 2022FS050509 I am requesting a complete and unredacted (or less-redacted) copy of the Enforcement Investigative Report (EIR) pertaining to FAA Case No. 2022FS050509, in which I, John Nuñez, am the subject of investigation. The report I

previously received is heavily redacted, omitting material critical to my ability to understand the FAA's reasoning and defend myself in a related federal civil matter. Specifically, I am requesting: 1. The complete and unredacted EIR, including: • Investigator Ronny Moon's full analysis, conclusions, recommendations, and any internal comments, memos, or notes contained within the EIR file. • Any redacted sections previously withheld under Exemption 5 (deliberative process), as I am the subject of the enforcement and currently engaged in legal proceedings where these records are material. 2. All supporting documentation and exhibits referenced in or attached to the EIR, including: • Cabin crew statements, summaries, or debrief notes from Flight 1124 (June 3, 2022). • Any CERS (Cabin Event Report Summary), if it exists. • Communications or coordination between FAA and American Airlines regarding the classification or enforcement outcome. • Internal FAA emails or memoranda discussing whether to pursue enforcement, what level of threat was assigned, and how sanction recommendations were made. 3. Any and all passenger witness statements or records of interviews conducted by the FAA, as referenced in the EIR (particularly those regarding passengers seated in 17A/B or nearby rows). 4. Any video, audio, or photographic evidence reviewed by the FAA as part of the enforcement process, including footage submitted by American Airlines or crew members. Please ensure that this request includes any versions of the EIR or attachments not previously disclosed in my prior FOIA response, including those referenced but withheld under redactions. I respectfully request expedited processing, or at least timely handling, in light of the fact that the redacted records are being used against me in active litigation. If any documents are withheld, I request an itemized Vaughn Index describing each withheld document and the basis for redaction or exemption. If clarification is needed, I can be reached at JOHNNUNEZ@YMAIL.COM or 786-425-1966. Thank you in advance for your attention to this request. Sincerely, John Nuñez

# Additional information

Screenshot 2025-04-18 at 11.02.27 pm.png

# Fees

**What type of requester are you?**
other

**Fee waiver**

no

---

# Request expedited processing

**Expedited processing**

yes

**Justification for expedited processing**

I respectfully request expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 49 C.F.R. § 7.31(c)(1)(ii) on the basis that there is an urgency to inform the public concerning actual or alleged federal government activity, and the records requested are of immediate relevance to ongoing civil litigation in which I am a named party. I, John Nuñez, am the subject of FAA Enforcement Case No. 2022FS050509. The records sought — including the unredacted Enforcement Investigative Report (EIR), the investigator's internal analysis, supporting documents, and correspondence between FAA and American Airlines — are material to my defense in an active federal lawsuit currently pending in the U.S. District Court for the Southern District of Florida (Case No. 1:24-cv-24470-RKA). The FAA's partially redacted EIR has already been referenced and relied upon by opposing counsel. However, significant sections related to the investigator's analysis and conclusions remain concealed. These omissions directly affect my ability to respond to the allegations and challenge the basis for the enforcement action. The public interest in the FAA's enforcement practices, including airline-collaborated misclassifications, has been heightened by this case and related media coverage. The prompt release of these records will significantly aid in exposing potential investigative misconduct and will provide critical context to a misclassification that has led to a lifetime airline ban, reputational harm, and emotional trauma. Accordingly, I meet the criteria for expedited processing as both the directly affected individual and as a party requiring these documents for time-sensitive legal proceedings involving potential violations of civil rights and due process. Sincerely, John Nuñez


FOIA.gov

**CONTACT**

Office of Information Policy (OIP)

U.S. Department of Justice

441 G St, NW, 6th Floor

Washington, DC 20530

E-mail: National.FOIAPortal@usdoj.gov

Hero image credit ☐ CC3.0

❘ FREQUENTLY ASKED QUESTIONS

❘ DEVELOPER RESOURCES

❘ AGENCY API SPEC

❘ FOIA CONTACT DOWNLOAD

❘ FOIA DATASET DOWNLOAD

❘ ACCESSIBILITY

❘ PRIVACY POLICY

❘ POLICIES & DISCLAIMERS

❘ JUSTICE.GOV

❘ USA.GOV ☐

# Exhibit E

## Order Denying Respondent's Motion to Dismiss – FAA Case No. 2022FS050509

**Description:**

This exhibit contains the official order issued by Administrative Law Judge Douglas M. Rawald denying the FAA's Motion to Dismiss and request for sanctions against Plaintiff. The order was issued in connection with FAA Enforcement Case No. 2022FS050509. It reflects the administrative judge's recognition of genuine factual disputes and raises serious credibility concerns regarding FAA witnesses.

**Relevance to this Case:**

This exhibit supports Plaintiff's Administrative Procedure Act (APA) claim by showing that the FAA's enforcement action was not procedurally sound and was based on questionable evidence. The existence of contested facts and credibility findings reinforces Plaintiff's argument that redacted portions of the EIR—relied upon by the FAA—must be disclosed for a fair and full review.

**Relation to Overlapping Related Case:**

In Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA, Defendant American Airlines has invoked the FAA's enforcement conclusions as justification for its actions. This order undercuts the integrity of that enforcement action, demonstrating that key witness claims were disputed and procedural irregularities existed. Full access to the unredacted EIR is essential for Plaintiff to effectively litigate both cases.

## UNITED STATES DEPARTMENT OF TRANSPORTATION
## FEDERAL AVIATION ADMINISTRATION
## WASHINGTON, DC

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| John Nuñez | )  FAA Order No. 2025-04 |
| | )  Served: June 16, 2025 |
| Dkt. No. G13-23-021 | ) |

*Appearances:*

FOR THE RESPONDENT:              John Nuñez, *pro se*

FOR THE COMPLAINANT:             Taneesha D. Marshall, Esq.
                                 Alexi Fong, Esq.

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS AND REQUEST FOR SANCTION AND RESPONDENT'S PETITIONS TO FILE ADDITIONAL BRIEFS

Mr. John Nuñez (Respondent) appealed Administrative Law Judge (ALJ) Douglas M. Rawald's Initial Decision finding Respondent interfered with the ability of crewmembers to perform their duties in violation of 14 CFR § 121.580 and assessing a civil penalty. Since filing his appeal brief in the matter, Respondent has: (1) filed a motion to dismiss the complaint and request for sanctions; (2) twice petitioned for leave to file additional briefs; and (3) submitted additional briefs and evidence without leave on numerous occasions.

As discussed below, Respondent's motion to dismiss and request for sanctions is DENIED and Respondent's petitions to file additional briefs are DENIED. In addition, Respondent's additional briefs and evidentiary submissions will not be considered in rendering a decision in this appeal.

### I. Motion to Dismiss and Request for Sanctions.

On February 9, 2025, Respondent filed a request to:
- Dismiss Complainant's charge of interference with prejudice;
- Impose sanctions on Complainant's counsel;
- Impose sanctions on American Airlines;
- Conduct an evidentiary hearing on purported procedural fraud and misrepresentations;
- Suppress a purportedly fraudulent report of investigation and allegedly illegally obtained video;

- Direct a Freedom of Information Act (FOIA) "order" for disclosure of allegedly suppressed communications;
- Initiate an investigation of an FAA investigator; and
- File a formal complaint for defamation and illegal recording by an individual who Respondent called as a witness at the hearing but who did not appear.[1]

Respondent cites no authority for the FAA decisionmaker to take any of the requested actions in an administrative appeal of a civil penalty.

## A. Motion to Dismiss the Complaint

Respondent's opportunity to move to dismiss for insufficiency or to dismiss the complaint was during the proceedings before the ALJ.[2]  In an appeal, parties may only move to dismiss *the appeal*.[3]  There is no authority to dismiss for insufficiency or to dismiss the complaint except in an appeal of an ALJ's ruling or order thereon.[4] This appeal does not involve such ruling or order.

The untimeliness of Respondent's motion to dismiss the complaint is fatal and requires denying the motion.  However, I recognize Respondent is appearing *pro se* and may not understand that his arguments should have been presented in his appeal brief.[5]  As such, I thoroughly reviewed his arguments for consideration as issues on appeal.[6]  As discussed below, I find Respondent's arguments do not merit consideration beyond ruling on his motion.

Initially, Respondent asserts that Complainant failed to establish a legally sufficient case for interference under 14 CFR § 91.11.  That is true, but not for the reasons Respondent advances.  It is true because Respondent was charged with interference under and found to have violated 14 CFR § 121.580.[7]

---

[1] *See* Respondent's Motion to Dismiss and Request for Sanctions.

[2] 14 CFR § 13.218(f)(1), (f)(2)(ii) (providing for a motion to dismiss for insufficiency or to dismiss the complaint in lieu of an answer in the proceedings before the ALJ) (2025).

[3] *See* 14 CFR § 13.233(d)(2) (2025); *Greater Orlando Aviation Authority*, FAA Order No. 2022-03 (Sept. 9, 2022) (dismissing appeal with prejudice upon withdraw of appeal by appealing party); *Wine Country Helicopters, Inc.*, FAA Order No. 2008-13 (Dec. 19, 2008) (dismissing appeal with prejudice upon withdraw of the complaint, resulting in the initial decision lacking the force and effect of law and rendering the appeal moot).

[4] *See* 14 CFR §§ 13.219, 13.233 (2025).

[5] *Compare* 14 CFR § 13.218(f)(1), (f)(2)(ii), *with* § 13.233(b), (d) (2025).

[6] *See* 14 CFR § 13.233(j)(1) (2025).

[7] Initial Decision at 1, 15.

Respondent goes on to argue that case law does not support the charge of interference. Despite the fact that the present matter concerns civil penalties for regulatory violations, Respondent cites two criminal cases to suggest that he did not have the specific intent to interfere with the flight crew.[8] These cases are not relevant inasmuch as they consider the standards for a criminal conviction, which are wholly different from the analysis used in civil penalty cases.[9] Moreover, without elaboration, I find that he misconstrues the courts' findings and the opinions do not support his position to any degree.[10]

Respondent also asserts that the enforcement action violated the equitable tolling and "continuous [sic] violation" doctrines. Equitable tolling allows a claim to proceed if the plaintiff does not discover an injury until after a statute of limitations period has expired.[11] The continuing violations doctrine extends a statute of limitations period for acts that are part of ongoing, injurious conduct.[12] Respondent does not explain the alleged delay in the enforcement action or how the doctrines apply to his allegation of selective enforcement. Suffice to say, the enforcement action does not violate either doctrine.[13]

Respondent also alleges that Complainant failed to conduct a fair and impartial investigation in violation of 5 U.S.C. § 706. Respondent's allegations that the investigation was unfair or not impartial are unsupported. Moreover, the cited statute is not one that Complainant can violate—it is a statute that describes a reviewing court's scope of review.

Intermixed with his arguments for dismissing the complaint, Respondent questions the credibility of witnesses and evidence relied upon by the ALJ. For example, Respondent alleges he was denied the right to cross-examine witnesses and access to exculpatory evidence in violation of the Fifth Amendment Due Process

---

[8] *See* Respondent's Motion to Dismiss and Request for Sanctions at 1–3 (citing *United States v. Hicks*, 980 F.2d 963 (5th Cir. 1992) and *United States v. Meeker*, 527 F.2d 12 (9th Cir. 1975)).

[9] *See Davis*, FAA Order No. 2025-03 at 6–7 (Apr. 25, 2025).

[10] Respondent also cites "FAA v Williams (2007)" and "Nelson v FAA (2017)" but does not provide citations to locate the purported decisions. *See* Respondent's Motion to Dismiss and Request for Sanctions at 3–5. Searches of the case names do not yield results that align with Respondent's descriptions of the cases. Even if Respondent's descriptions are accurate, however, they ultimately do not support his arguments.

[11] *See Equitable tolling*, BLACK'S LAW DICTIONARY (12th ed. 2024), *available at Westlaw*.

[12] *See Continuing violations doctrine*, BLACK'S LAW DICTIONARY (12th ed. 2024), *available at Westlaw*.

[13] The conduct occurred on June 3, 2022 and Complainant issued the notice of proposed civil penalty to Respondent on September 16, 2022. Initial Decision at 1. Complainant issued the notice of proposed civil penalty well within the two-year timeframe. 14 CFR § 13.208(d) (allowing a respondent to move to dismiss a complaint or allegation if the alleged violation at issue occurred more than two years before issuance of a notice of proposed civil penalty) (2025).

Clause.  In fact, Respondent cross-examined Complainant's witnesses, and the record reflects that he was provided with the available evidence.[14]

Respondent claims that a breathalyzer test result is exculpatory evidence and was suppressed by Complainant.  Respondent's assertion is puzzling given there was testimony at the hearing about the breathalyzer test that Respondent requested from local authorities and its irrelevance to the interference charge.[15]  Further, the ALJ made a finding based on the hearing testimony that the test revealed that Respondent was not intoxicated at the time he deplaned.[16]  Moreover, Complainant did not have the test result—Complainant explained it did not collect the test result because it was not relevant to the investigation.[17]

Respondent also claims that Complainant failed to produce a "Captain's Log" and cockpit recordings, depriving him of the opportunity to rebut allegations.  Respondent's opportunity to request evidence that he believed was relevant was during discovery in the proceedings before the ALJ.[18]  Respondent does not show that he requested the evidence during discovery.  Further, there is no evidence that Complainant collected a log or recording in its investigation.

Respondent goes on to fault Complainant for not calling the captain to testify, which Respondent believes goes to the "crux" of his case.  Respondent's opportunity to request a subpoena to compel the captain's appearance or to request a deposition or interrogatories as part of discovery were, again, during the proceedings before the ALJ.[19]  Respondent, again, does not show that he made any such requests.  Moreover, Respondent's theory that the captain's testimony would change the outcome is unpersuasive considering the totality of the evidence.

Respondent also raises issues about American Airlines' policies.  Respondent continues to conflate this enforcement action with his customer service dispute with American Airlines.  American Airlines' policies and its employees' adherence to its policies are not at issue—Respondent's conduct when faced with what he perceived as poor customer service is at issue.

---

[14] See Initial Decision Appendix 1 (Complainant's Exhibits); Hearing Transcript (Tr.) at 5–12, 32–45, 63–78, 87–103, 122–133.

[15] Tr. at 186–189, 193–194, 208–209.

[16] Initial Decision at 6; see also Evidence – exculpatory evidence, BLACK'S LAW DICTIONARY (12th ed. 2024), available at Westlaw ("Evidence tending to establish a criminal defendant's innocence.  The prosecution has a duty to disclose exculpatory evidence in its possession or control when the evidence may be material to the outcome of the case." (citations omitted)).

[17] See Tr. at 208–209.

[18] 14 CFR § 13.220 (2025).

[19] 14 CFR §§ 13.220(j), (k); 13.228(a) (2025).

4

## B. Request for Sanctions

Respondent requests sanctions against Complainant's counsel and American Airlines. There is no authority to impose sanctions on a non-party (American Airlines) under the procedural rules.[20] In an FAA civil penalty appeal, sanctions may only be imposed on a party or a party's representative who signs a document in violation of the certification requirements in the procedural rules.[21]

In arguing for sanctions against Complainant's counsel, Respondent cites 28 U.S.C. § 1927, which allows a U.S. court to require an attorney to pay excess costs, expenses, and attorney's fees for "unreasonably and vexatiously" multiplying the proceedings. The statute simply has no application here—this proceeding is not before a U.S. court—and Complainant's counsel has not multiplied the proceedings.

Further, there is no basis in the pleadings to conclude that Complainant's counsel violated the certification requirements in submitting pleadings.

## C. Other Requests

As noted at the outset, Respondent makes several additional requests.

Respondent requests an investigation of the FAA investigator and to file a defamation complaint. There are no authorities to direct an internal investigation in the course of adjudicating a civil penalty appeal, or for the civil penalty appeals process to serve as a forum for tort claims such as defamation.[22]

Respondent requests that certain evidence be suppressed and an evidentiary hearing "on the FAA's procedural fraud and misrepresentations." These requests are not grounded in law or the record and will not be entertained. The record makes clear that the ALJ ensured evidence was shared and objections to evidence were addressed.[23] Further, if an issue is raised during an appeal that requires the consideration of additional testimony or evidence, which the requested hearing would, the FAA decisionmaker remands the case to the ALJ for additional proceedings.[24] Respondent's assertions do not provide a basis for such an extraordinary action.

---

[20] *See* 14 CFR §§ 13.207(c), 13.217(f), 13.220(n) (2025).

[21] 14 CFR § 13.207(c) (2025).

[22] *See* 14 CFR § 13.233 (2025).

[23] Tr. at 5–12.

[24] 14 CFR § 13.233(j)(1) (2025).

Respondent requests a "FOIA order" to obtain "all suppressed communications, including the missing Captain's Log." Respondent offers no evidence, nor a credible theory, that the items exist or something used in pursuing the complaint was suppressed. Again, Respondent's opportunity for discovery was during the proceedings before the ALJ and there is no indication that Respondent requested and was denied the items that he now claims are crucial.[25] Moreover, the record on appeal is the evidence proffered to the ALJ—additional evidence is not considered absent a remand to the ALJ for further proceedings.[26]

Respondent's motion to dismiss the complaint and his various requests are DENIED.

## II. Petitions of February 9 and April 3, 2025 for Leave to File Additional Briefs

Respondent filed two petitions to file additional briefs, one on February 9 and the other on April 3, 2025. As a general matter, the parties must include the full scope of their arguments in their initial briefings.[27] A party may not file more than one appeal brief unless the party petitions for and the FAA decisionmaker grants leave to file an additional brief.[28] The FAA decisionmaker must find the party "demonstrates good cause for allowing additional argument" to grant leave.[29]

Good cause may be found, for example, when an opposing party's brief raises a new issue or contains relevant factual errors.[30] However, good cause is generally not demonstrated when a party has already briefed an issue, is seeking to present information that was previously available, or merely seeks to correct or clarify misleading or unclear portions of the opposing party's brief.[31] The decisionmaker is generally able to assess whether arguments and citations are supported by the evidence without additional briefing. Further, additional briefing on irrelevant or non-responsive matters does not serve the interests of justice or administrative efficiency.

---

[25] 14 CFR § 13.220 (2025).

[26] 14 CFR §§ 13.230; 13.233(j)(1) (2025).

[27] See 14 CFR § 13.233(d)–(e) (2025).

[28] 14 CFR § 13.233(f) (2025).

[29] Id.

[30] See FedEx, FAA Order No. 2000-23 at 2 (Dec. 13, 2000); Sanford Air, FAA Order No. 1997-22 at 2 (May 28, 1997); Westair, FAA Order No. 1993-06 at 1 (Mar. 16, 1993).

[31] See Pinnacle, FAA Order No. 2010-02 at 1–2 (Mar. 26, 2010); Stebbins, FAA Order No. 2005-09 at 2 (Apr. 21, 2005); Northwest, FAA Order No. 1994-04 at 8 n.12 (Mar. 10, 1994).

**A. The February 9, 2025 petition is denied.**

In his February petition, Respondent requests the opportunity to argue that Complainant deliberately ignored evidence and built its case on selective omissions and questionable witnesses. Further, he argues that the American Airlines crew engaged in discriminatory conduct and violated international passenger rights. Respondent also proposes to introduce evidence to support his arguments, including the Montreal Convention, witness testimony from the hearing, and American Airlines' conditions of carriage.

Specifically, Respondent seeks to provide additional briefing on the breathalyzer test that he requested from local law enforcement when he deplaned and the testimony of a local law enforcement officer who he called as a witness. The officer's testimony and testimony about the breathalyzer result are in the record.[32] Further, Respondent provided argument related to the officer's testimony in his November 7, 2024 brief.[33] Good cause is not demonstrated for additional briefing on the officer's testimony or the breathalyzer test.

Respondent also seeks to provide further briefing on a fellow passenger's testimony. The passenger's testimony is in the record and Respondent provided his related argument at the hearing and in his November 7, 2024 brief.[34] Good cause is not demonstrated for additional briefing on the passenger's testimony.

Respondent seeks to provide additional briefing on alleged discrimination by the crew members based on his status as a non-revenue passenger, his ethnicity, and his appearance. Respondent raised these allegations at the hearing and there is testimony in the record regarding his arguments.[35] Respondent also already briefed his arguments on the alleged crew bias and profiling in his November 7, 2024 brief.[36] Good cause is not demonstrated for additional briefing on Respondent's allegations of discrimination.

Respondent also seeks to provide additional briefing on alleged violations of the Montreal Convention for failing to accommodate Respondent's medical condition and engaging in retaliatory actions. Respondent briefed his arguments on alleged violations of the Americans with Disabilities Act, the Air Carrier Access Act, and FAA regulations on access to restroom facilities in his November 7, 2024 brief.[37]

---

[32] Tr. at 186–189, 193–194, 208–209.

[33] Respondent's Appeal and Request for Review at 2 (Nov. 7, 2024).

[34] *Id.* at 2; Tr. at 17, 80–104, 146–147, 155, 204–205, 221, 223.

[35] Tr. at 17, 33–35, 41–42, 63–64, 71, 73–75, 77–78, 141–146, 159, 164, 173.

[36] Respondent's Appeal and Request for Review at 2 (Nov. 7, 2024).

[37] *Id.* at 2–5.

The Montreal Convention, however, does not address accommodating passengers' medical conditions or retaliation—it addresses airline liability in the case of death or injury to passengers, as well as in cases of delay, damage or loss of baggage and cargo.[38]  Respondent's arguments related to his medical condition and the alleged failures to accommodate his medical condition are sufficiently discussed in the record and Respondent's November 7, 2024 brief.[39]  Moreover, the Montreal Convention is not relevant to the issues addressed in the initial decision or those on appeal.  Good cause is not demonstrated for additional briefing on Respondent's allegations of international law violations.

Lastly, Respondent seeks to provide additional briefing on the American Airlines' conditions of carriage and that the crew disregarded American Airlines' policies by refusing to accommodate Respondent's medical needs.  Again, Respondent's arguments related to his medical condition are sufficiently discussed in the record and Respondent's November 7, 2024 brief.[40]  Further, American Airlines' policies and whether the crew adhered to those polices are not at issue.  Good cause is not demonstrated for additional briefing on Respondent's argument that the crew disregarded American Airlines' conditions of carriage and refused to accommodate his medical condition.

In sum, good cause is not found for additional briefing on any of the proposed topics.  Respondent's February petition is DENIED.  Respondent is not granted leave to file an additional brief.

### B. The April 3, 2025 petition is denied.

Unrelated to the February petition, Respondent then filed a Motion to Supplement the Record on March 29, 2025, seeking admission of a recent email from American Airlines' customer relations.[41]  Respondent asserted that the email demonstrates that he was not intoxicated, the crew lacked professionalism even if they followed internal protocols, and the incident caused him inconvenience and an adverse impact.  Five days later, on April 3, 2025, Respondent belatedly petitioned for leave to file a supplemental brief and the email (April petition).[42]  In his April

---

[38] *See* Convention for the Unification of Certain Rules for International Carriage by Air (The Montreal Convention 1999), Nov. 4, 2003, S. Treaty Doc. 106–45, *available at* https://www.congress.gov/106/cdoc/tdoc45/CDOC-106tdoc45.pdf (last visited June 11, 2025).

[39] Respondent's Appeal and Request for Review at 2–5 (Nov. 7, 2024); Tr. at 17, 72–76, 78, 145, 155, 159–160, 169–170, 174, 205–208, 219–220, 223.

[40] *See supra* note 39.

[41] Respondent's Motion to Supplement the Record and Enhance Appellant's Position in Light of Recent Evidence (Mar. 29, 2025).

[42] Respondent's Motion for Leave to File Supplemental Brief and Admit Additional Materials (Apr. 3, 2025).

petition, Respondent argues that the email is responsive to the initial decision and affirms material facts that Respondent previously argued.

Respondent's April petition is less about filing a brief than it is about submitting a communication from an American Airlines customer relations representative responding to his complaints. The evidence is not relevant to the proceedings and additional briefing is not needed on American Airlines' customer relations department's perspectives on the incident. Moreover, the primary points that Respondent wishes to highlight are well covered in the record (for example, whether Respondent was intoxicated) or are not relevant (for example, the crews' professionalism, the impact on Respondent).

Good cause is not found for additional briefing on the American Airlines' customer relations email. Respondent's April petition is DENIED. Respondent is not granted leave to file an additional brief.

### III. Supplemental Briefs and Evidentiary Submissions of January 5, January 7, January 8, January 9, January 28, February 9, March 29, April 2, April 3, April 7, and April 8, 2025

Respondent has filed several supplemental briefs and submitted evidence since filing his December 28, 2024 amended brief.[43] Respondent never petitioned for permission to file these briefs and evidence. Complainant objects to consideration of Respondent's supplemental filings and evidentiary submissions.[44]

As previously discussed, the rules require a party to petition and be granted leave to file additional briefs.[45] The additional brief may not be filed with the petition. Instead, it will be accepted only after leave is granted to file the brief.[46]

The procedural rules also provide that exhibits admitted into evidence by the ALJ and evidence proffered to but not admitted by the ALJ constitute the record on appeal.[47] Extra-record materials proffered only on appeal—that is, records that are *not* part of the appeal record—are not considered on appeal.[48] Rather, in the rare

---

[43] Consideration of Respondent's November 7 and December 28, 2024 briefs is reserved for the decision on this matter. This discussion relates only to Respondent's post-December 28, 2024 submissions not otherwise addressed in this Order.

[44] Complainant's Reply Brief (Jan. 30, 2025); Complainant's Opposition to Respondent's Petition for Leave (Apr. 7, 2025).

[45] 14 CFR § 13.233(f) (2025).

[46] *Id.*

[47] 14 CFR § 13.230 (2025).

[48] *See Hereth*, FAA Order No. 1995-26 at 7–8 (Dec. 19, 1995).

instance when the FAA decisionmaker finds additional testimony or evidence is necessary, the mechanism for supplementing the record is through further proceedings before the ALJ.[49]

Even as a party without a lawyer (that is, a *pro se* party), Respondent is expected to know and adhere to procedural rules.[50]  The rules are enforced in a non-arbitrary manner to ensure the integrity of the civil penalty process.[51]

Here, Respondent has not followed the rules.  He has filed pleadings and offered extra-record evidence in a haphazard manner.  In some instances, he has not filed a petition for leave to submit an additional brief.  In other instances, he filed an additional brief with his petition.  In still other instances—or in some cases, additionally—he attempts to submit extra-record evidence for consideration.

Appeals are not an iterative process and do not proceed in a haphazard manner. The process ensures a fair, efficient, and focused review of disputes related to the ALJ's decision, with revisiting the evidence of record and underlying issues only in the most extraordinary circumstances.

Even giving Respondent due consideration as a *pro se* party, Respondent has not demonstrated good cause for allowing additional argument, nor raised an issue that requires consideration of additional testimony or evidence such that a remand for further proceedings is warranted.[52]  Rather, Respondent's pleadings and evidentiary submissions continue a pattern of raising spurious arguments and offering irrelevant evidence.

Complainant's objections are sustained.  Respondent's supplemental briefs and evidentiary submissions of January 5, January 7, January 8, January 9, January 28, February 9, March 29, April 2, April 3, April 7, and April 8, 2025 will not be considered in rendering a decision in this appeal.

## IV.   Order

Respondent's motion to dismiss the complaint is DENIED because there is no legal basis for the motion during an appeal.  Respondent's requests for sanctions

---

[49] 14 CFR § 13.233(j) (2025).

[50] *See Brown*, FAA Order No. 2023-04 at 4 (Aug. 1, 2023) (citing *Global Peace Initiative, Inc.*, FAA Order No. 2008-8 at 5–6 (Aug. 21, 2008)).

[51] *See id.* (citing *Larry's Flying Service, Inc.*, FAA Order No. 1998-4 at 8 (Mar. 12, 1998); *see also Scott*, FAA Order No. 2023-08 (corrected) (May 21, 2024) (dismissing a party's appeal for failing to file a timely notice of appeal); *Felts Field Aviation*, FAA Order No. 2020-03 (Sept. 15, 2020) (dismissing a party's appeal for failing to file a timely appeal brief to perfect the party's appeal).

[52] *See* 14 CFR § 13.233(f), (j)(1) (2025).

and other actions are DENIED because there is no legal authority for the requested actions.  Respondent's petitions for leave to file additional briefs are DENIED because he did not establish good cause for additional briefs.  Respondent's other post-December 28, 2024 filings and evidentiary submissions will not be considered in rendering a decision in this appeal because Respondent did not have leave to file additional briefs and the record may not be supplemented on appeal.

Issued for the FAA Administrator,[53]

JOHN A. DIETRICH
Director and Chief Administrative Judge
Office of Adjudication
Federal Aviation Administration

---

[53] Under a delegation of authority dated March 28, 2016, the Director of the Office of Adjudication may "issue procedural and other interlocutory orders aimed at proper and efficient case management, including, without limitation, scheduling and sanctions orders." *Delegation of Authority*, 81 Fed. Reg. 24686, 24686 (Apr. 26, 2016).

Docket No. **G13-23-021**
(Civil Penalty Appeal)

### CERTIFICATE OF SERVICE

On June 16, 2025, the FAA Hearing Docket served this Order Denying Respondent's Motion to Dismiss and Request for Sanctions and Respondent's Petitions to File Additional Briefs on both parties by email as follows:

*Respondent:*
John Nuñez
14475 SW 23rd Terrace
Miami, FL 33175

Email: johnnunez@ymail.com

*Counsel for Complainant:*
Alexi Fong, Esq.
Aviation Litigation Division, AGC-300
2200 South 216th Street
Des Moines, WA 98198
Email: alexi.fong@faa.gov


Maisha A. Kingsberry
FAA Hearing Docket Clerk

# Exhibit F

## Congressional Correspondence – Rep. Carlos Gimenez

### Description:

This exhibit includes email communications between Plaintiff and the office of Congressman Carlos Gimenez regarding the FAA's conduct in Enforcement Case No. 2022FS050509. The correspondence documents Plaintiff's request for legislative oversight and intervention into FAA transparency and investigatory integrity.

### Relevance to this Case:

This communication demonstrates public interest in the withheld records and Plaintiff's exhaustion of available non-judicial remedies. It supports Plaintiff's argument that the FAA's refusal to produce unredacted materials is both procedurally harmful and substantively unjustified under FOIA and the APA. The exhibit also strengthens the case for expedited FOIA review.

### Relation to Overlapping Related Case:

American Airlines has cited FAA findings—based on the disputed and redacted EIR—as justification for adverse actions in Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA. This exhibit proves that those FAA findings were the subject of independent congressional concern, bolstering Plaintiff's claim that complete and transparent disclosure is essential for a fair adjudication in both proceedings.



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

June 10, 2025

The Honorable Carlos Gimenez
U.S. House of Representatives
Washington, D.C. 20515

Dear Representative Gimenez:

Thank you for your May 19 inquiry on behalf of your constituent, John Nunez, regarding a
Federal Aviation Administration (FAA) enforcement action against Mr. Nunez.

An FAA investigation revealed that on June 3, 2022, Mr. Nunez was a passenger aboard
American Airlines Flight 1124 from Barranquilla, Colombia, to Miami, Florida. During the
flight, Mr. Nunez raised his voice and confronted a flight attendant extremely close to her face
after being told he could not use the business class lavatory because he was seated in the main
cabin. Later in the flight, the cabin crew declined to serve Mr. Nunez alcohol, and he followed
the flight attendant involved to the rear of the aircraft while yelling at her. He also refused to
return to his seat when a flight attendant instructed him to do so.

As a result of Mr. Nunez's behavior, the captain diverted the flight and returned to Barranquilla,
where law enforcement met the aircraft and escorted Mr. Nunez off the aircraft. Mr. Nunez
interfered with crewmembers' duties during the flight in violation of 14 CFR § 121.580. The
investigation followed FAA procedures and standards.

On September 16, 2022, the FAA notified Mr. Nunez, through a Notice of Proposed Civil
Penalty, that the Agency proposed a $10,500 civil penalty pursuant to 49 U.S.C. § 46301(a). On
November 21, 2022, the FAA held an informal conference with Mr. Nunez to discuss the matter
and see if it could be resolved as is routine. The FAA and Mr. Nunez could not agree on a
resolution, and the FAA issued a Final Notice of Proposed Civil Penalty on March 22, 2023.

Mr. Nunez timely requested a hearing before a National Transportation Safety Board (NTSB)
administrative law judge (ALJ) to challenge the FAA's proposed civil penalty. The hearing was
held on October 8, 2024, and Mr. Nunez was permitted to present evidence, cross-examine
witnesses, and present his argument as to why his actions did not violate 14 CFR § 121.580 as
alleged.

Following the hearing, the ALJ ruled that Mr. Nunez's behavior interfered with crewmembers in
the performance of their duties and reduced the civil penalty to $4,500. Mr. Nunez timely
appealed the ALJ decision to the full NTSB, and that appeal is still pending. Should Mr. Nunez

disagree with the appellate decision, he may file a petition for review of that decision in federal circuit court.

Sincerely,

Chief Counsel

# Exhibit G

## American Airlines' Filing Referencing FAA Enforcement Findings (Case No. 1:25-cv-21630-RKA)

**Description:**

This exhibit contains Docket Entry 43 (DE43) from Nuñez v. American Airlines, Case No. 1:25-cv-21630-RKA. In this filing, American Airlines explicitly cites the FAA's civil penalty enforcement action and its conclusions to justify the company's decision to bar Plaintiff from future travel. The filing references the FAA's redacted Enforcement Investigative Report (EIR) and uses it as a defense and basis for dismissal.

**Relevance to this Case:**

This filing demonstrates that the FAA's redacted EIR is actively being used against Plaintiff in related litigation. It supports Plaintiff's claim under FOIA and the APA that the withheld records are material, that their continued concealment causes ongoing harm, and that full disclosure is necessary for a fair and informed legal process.

**Relation to Overlapping Related Case:**

This filing originates directly from the civil rights case Nuñez v. American Airlines and highlights the prejudicial use of undisclosed FAA materials. It shows how American Airlines has interwoven FAA findings into its defense strategy, thereby reinforcing the urgency and necessity of releasing the full unredacted EIR through judicial intervention.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

JOHN NUNEZ,                          :
                                     :
                                     :
                    Plaintiff,       :          CIVIL ACTION
                                     :
                                     :          CASE NO.: 1:25-cv-21630-RKA
         v.                          :
                                     :
                                     :
AMERICAN AIRLINES, INC.,             :
                                     :
                                     :
                    Defendant.       :
                                     :

## AMERICAN AIRLINES INC.'S RESPONSE TO PLAINTIFF'S FILING [DE 42] TITLED PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DE 41)[sic]

Defendant, American Airlines, Inc. ("**AA**"), responds to Plaintiff's filing [DE 42] titled "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (DE 41)" ("**Plaintiff's Response**") and states as follows:

1.      It is not clear which of AA's previous filings and/or briefs Plaintiff's Response [DE 42] is *actually* responding to.

2.      He labels his filing a "Response" to "Defendant's Motion to Dismiss (DE 41)," but docket entry 41 is *not* AA's Motion to Dismiss. It is AA's Response to Plaintiff's Motion for Temporary Restraining Order [DE 41].

3.      A review of the substance of the Plaintiff's Response [DE 42] provides no further clarity either, as Plaintiff's arguments do not respond directly to any arguments in either motion but instead venture off into arguments seemingly related to a separate administrative proceeding (explained in more detail below).

4.    Therefore, in an abundance of caution, AA will respond to Plaintiff's Response [DE 42] as if it were either: (I) an attempted sur-reply to AA's Reply in support of AA's Motion to Dismiss [DE 30] ("**Motion to Dismiss Reply**"); or (II) a reply in support of Plaintiff's Renewed Motion for Temporary Restraining Order [DE 32] ("**Motion for TRO**") and in response to AA's Response to that Motion for Temporary Restraining [DE 41] ("**Response to Plaintiff's Motion for TRO**").[1]

## I.    If Plaintiff's Response [DE 42] Is Meant as a Sur-Reply to AA's Reply in Support of AA's Motion to Dismiss [DE 30], It Is Improper and Contrary to the Order(s) of this Court.

5.    First, the Local Rules of this Court do not allow parties to file more than one responsive brief without leave of Court. *See* Local Rule ("L.R.") 7.1(c)(1) (permitting the party opposing a motion to "file and serve an opposing memorandum of law" and prohibiting any "further or additional memoranda of law" without prior "leave of Court").

6.    Irrespective of what he titles this filing [DE 42], if it is actually aimed at AA's Reply in Support of AA's Motion to Dismiss [DE 30], Plaintiff's Response [DE 42] violates this Local Rule as it constitutes an improper attempt at a sur-reply (i.e. a second response) filed without leave of court.  Plaintiff already filed his one-allowable opposition brief to Defendant's Motion to Dismiss [DE 17] on May 9, 2025.  *See* Plaintiff's Consolidated Omnibus Opposition to Defendant's Motion to Dismiss [DE 22] ("**Omnibus Opposition**").  The Court acknowledged that Omnibus Opposition [DE 22] as Plaintiff's one allowable responsive brief,[2] and then rejected

---

[1] The Court's CM/ECF system directed AA to respond to Plaintiff's Response [DE 42] by June 16, 2025.

[2] *See* Paperless Order Striking the Plaintiff's "Omnibus" Opposition and the Plaintiff's Motion for Judicial Notice [DE 29] ("The Opposition is stricken insofar as it raises an entirely separate motion . . . The Opposition may otherwise remain as the Plaintiff's response to the Motion to Dismiss . . .").  Plaintiff has not sought leave to file this Response [DE 42] as a sur-reply, (nor conferred with AA regarding same), and he thus has violated the Local Rules. *See,* L.R. 7.1(c)(1).

Plaintiff's request for leave to file a sur-reply. *See* Paperless Order Striking Plaintiff's Motion for Leave to File Sur-Reply [DE 39] ("Even if [Plaintiff] had conferred, though, we'd deny his Motion because his sur-reply is unnecessary.").

7.      Plaintiff did not seek (or receive) leave prior to filing this attempted sur-reply. He has therefore violated the Local Rules.  Further, given that this Court has held, via a "clear and unambiguous" order, that a sur-reply to the Motion to Dismiss [DE 17] is inappropriate, Plaintiff has filed this Response [DE 42] in direct violation of this Court's order.[3]  Plaintiff's Response [DE 42] should be stricken and/or disregarded due to that impropriety.

8.      Second, Plaintiff's attempted sur-reply should also be disregarded because it appears focused on completely irrelevant issues, which are not the subject of Plaintiff's claims, nor the basis of AA's Motion to Dismiss [DE 17], nor even matters within the jurisdiction of this Court.

9.      Specifically, Plaintiff's Response [DE 42] appears to be focused on perceived procedural defects in the Federal Aviation Administration's prosecution of him in a completely separate administrative proceeding pending before the United States Department of Transportation ("**DOT**").[4]  AA was not a party to that proceeding; that proceeding is not the subject of any of Plaintiff's claims, and, accordingly, AA did not nor need not "rely" upon that separate proceeding to move to dismiss Plaintiff's claims.

---

[3] Plaintiff may thus be held in contempt because Plaintiff has violated a valid and lawful order of this Court which was "clear and unambiguous." *Lustig v. Stone*, No. 15-20150-CIV, 2017 WL 8889841, *2 (S.D. Fla. Dec. 11, 2017), *report and recommendation adopted*, No. 15-20150-CIV, 2018 WL 1870071 (S.D. Fla. Jan. 9, 2018) (citing *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015).

[4] *See, e.g.* Plaintiff's Response [DE 42] at pp. 3-4.

10.     Whether or not Plaintiff suffered a lack of "due process" before the DOT (as he argues in detail in this Response [DE 42])[5] is completely irrelevant to the arguments made in AA's Motion to Dismiss [DE 17], which challenged the sufficiency of Plaintiff's substantive claims in this action under Federal Rule of Civil Procedure 12(b)(6).  None of those claims are derived from the DOT proceeding.[6] Plaintiff's Response [DE 42] should therefore be disregarded for this reason, as well.

11.     Third, the only pertinent issue raised by Plaintiff in this Response [DE 42] appears to be his (erroneous) belief that the Montreal Convention's two-year condition precedent period for filing suit has *not* expired, and that equitable tolling applies to toll that two-year period. However, AA's Motion to Dismiss [DE 17] and Reply [DE 17] on these issues should have convinced him otherwise.[7]

12.     Regardless, and in sum, as it pertains to Defendant's Reply in Support of AA's Motion to Dismiss [DE 30], Plaintiff's Response [DE 42] is improper, and in substance, nothing but an expression of a stream of consciousness grievance on a separate proceeding, against (ostensibly) a government agency, which has no home within the boundaries of Plaintiff's claims, AA's Motion to Dismiss [DE 17], AA's Reply in Support of its Motion to Dismiss [DE 30], or the jurisdiction of this Court. It should therefore be disregarded in its entirety.

---

[5] *See, e.g.* Plaintiff's Response [DE 42] at pp. 3-4.
[6] *See,* Motion to Dismiss [DE 17] at ¶¶14-15.
[7] *See* AA's Motion to Dismiss Reply [DE 30] at ¶¶19 and footnote 23.

**II.**   **If Plaintiff's Response [DE 42] Is Meant as a Reply to AA's Response to Plaintiff's Motion for Temporary Restraining Order [DE 41], It Is Improper and Untimely.**

13.   To the extent (substance over form) Plaintiff's Response [DE 42] is actually aimed at AA's Response to Plaintiff's Motion for TRO [DE 41], it is likewise improper and should likewise be disregarded.

14.   To begin with, AA filed its Response [DE 41] to Plaintiff's Motion for TRO on May 30, 2025.  Thus, Plaintiff's reply (if any) needed to be filed by June 6, 2025.  *See* L.R. 7.1(c)(1) ("The movant may, within seven (7) days after service of an opposing memorandum of law, file and serve a reply memorandum in support of the motion.").  Plaintiff, however, filed this Response [DE 42] on June 9, 2025—three (3) days after that deadline expired.  *See* Plaintiff's Response [DE 42].  Plaintiff's Response [DE 42] was thus untimely and filed in violation of the Local Rules of this Court.

15.   Additionally, if aimed at AA's Response to Plaintiff's Motion for TRO [DE 41], Plaintiff's Response [DE 42] would also violate the Local Rules in substance. A reply brief *must* be confined to a "rebuttal of matters raised in the memorandum in opposition." *See* L.R. 7.1(c)(1) (the movant's reply should be limited to a rebuttal of the matters raised in the opposition "without re-argument of matters covered in the movant's initial memorandum of law.").   Plaintiff's Response [DE 42] disregards this mandate.  It ignores (and thus concedes) virtually every argument raised in AA's Response to Plaintiff's Motion for TRO [DE 41], including (most critically) the argument that Plaintiff has failed to demonstrate "irreparable harm" (without which the Court need not burden itself with any further analysis).[8] Sidestepping the obligation to

---

[8] *See* AA Response to the Motion for TRO [DE 41] at ¶¶32-38.

substantively reply, the Response [DE 42] instead ventures off the grid and focuses on new (unpled) due process grievances related to the above-discussed DOT proceedings.

16.     Even with a generous reading, the only argument in Plaintiff's Response that could *potentially* be seen as addressing the arguments in AA's Response to Plaintiff's Motion for TRO [DE 41] is that he has a substantial likelihood of success on the merits because his claims are not preempted by the Montreal Convention and its two-year condition precedent. However, his "rebuttal" in this regard is propelled solely by misrepresentations of case law[9] and his legally frivolous argument that the Montreal Convention's two-year condition precedent is subject to equitable tolling.[10]

17.     Given the foregoing, AA respectfully requests that this Court disregard this Plaintiff's Response [DE 42] filing as improper, untimely, and in violation of the Local Rules and orders of this Court.

Respectfully Submitted,

By:/s/ Kelly H. Kolb
Kelly H. Kolb, Esq. FBN 343330
kelly.kolb@bipc.com
Robert Pecchio, Esq. FBN 1005955
robert.pecchio@bipc.com

---

[9] A recurring issue for Plaintiff in this case. *See, discussion* in AA's Reply in support of Motion to Dismiss [DE 30] at ¶12. In the instant Response [DE 42], Plaintiffs makes the statement that "Courts have consistently held that due process claims grounded in procedural fairness are not preempted by the Montreal Convention." *See,* Plaintiff's Response [DE 42] at p. 14. However, he cites no other cases other than *Greene v. McElroy,* 360 U.S. 474 (1959) for this proposition, which is clearly inapplicable as the Montreal Convention was adopted in 1999. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350 ("**Montreal Convention**"), at Article 53.

[10] *See, e.g.* AA's explanation that the Montreal Convention's two-year period for filing suit commences on the date of the subject flight's arrival and that "equitable tolling" cannot be applied to the Montreal Convention in AA's Reply in support of Motion to Dismiss [DE 30] at ¶¶19 and footnote 23.

**BUCHANAN INGERSOLL & ROONEY PC**
401 E Las Olas Blvd Ste 2250
Fort Lauderdale, FL 33301-4251
*Attorneys for Defendant, American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been electronically filed with the Clerk of Court using CM/ECF on June 16, 2025 and served via e-mail and/or U.S. Mail to all parties registered on the CM/ECF system.

By: */s/ Kelly H. Kolb*
Kelly H. Kolb, Esq.

## SERVICE LIST

Mr. John Nunez, *Pro Se*
Email: johnnunez@ymail.com
14475 SW 23rd Terrace
Miami, FL 33175

# EXHIBIT H

## March 28, 2025 Letter from American Airlines to Plaintiff

## Description:

This letter, sent by American Airlines on March 28, 2025, informs Plaintiff John Nuñez of the airline's decision to uphold a flight restriction based on alleged conduct aboard Flight 1124 (June 3, 2022). The letter relies heavily on FAA enforcement findings and characterizations that have since been **discredited or narrowed** by the agency's own later rulings (See Exhibit E).

## Relevance:

- **Directly at issue in this case**. American Airlines has repeatedly cited or relied on this letter, including in its April 9, 2025 correspondence to Plaintiff (Exhibit I), to justify continued adverse treatment of Plaintiff.

- **Key to Plaintiff's estoppel and due process claims**. The letter reflects **continued reliance on FAA findings** that Defendant now seeks to distance itself from in this litigation, raising questions of fairness and consistency.

- While Judge Altman is already familiar with this exhibit, it is included here for clarity and completeness of the record—especially for any reviewing court or successor judge.

**Nuñez v. American Airlines, Inc., Case No. 1:25-cv-21630-RKA:**

- The March 28 letter is already referenced by Defendant American Airlines in its April 9, 2025 correspondence (now separately listed as Exhibit I), and it has been placed at issue in their defense.
- The letter is also critical to Plaintiff's anticipated estoppel argument, as **Defendant seeks to discredit FAA findings in federal court** while simultaneously using those same findings to justify extrajudicial penalties outside of court—a contradiction that implicates principles of judicial estoppel and fairness.



**From:** AmericanAirlinesCustomerRelations@aa.com
**Subject:** Your Response From American Airlines
**Date:** March 28, 2025 at 5:55 pm
**To:** johnnunez@ymall.com



March 28, 2025

Hello Mr. Nunez:

The Department of Transportation Aviation Consumer Protection Division has recently forwarded your correspondence, case numb
TU2025023049. On behalf of American Airlines, we appreciate this opportunity to respond to your concerns.

Thank you for taking the time to share your concerns regarding your experience aboard American Airlines Flight 1124 on June 3, 2
We sincerely regret the frustration and distress this incident caused you, and we appreciate the opportunity to address your complai
thoroughly.

After a comprehensive review of your case, including the findings from the U.S. Department of Transportation's proceedings (Dock
G13-23-021), we would like to provide you with a response.

The DOT's investigation confirmed that our crew followed established policies regarding lavatory access and beverage service for n
revenue passengers. While we understand your perspective as a valued Platinum Executive member, the crew's decisions were mad
accordance with these policies. The administrative law judge did note that the situation could have been handled with greater
professionalism by our team, and we take this feedback seriously.

Regarding the flight diversion, this action was taken based on the captain's assessment of the situation at that time. We acknowledg
significant inconvenience this caused you, though the DOT found this decision to be within operational protocols. We are pleased to
the investigation confirmed your sobriety through the breathalyzer test administered upon landing. After careful consideration of all
factors, including the DOT's findings and our internal policies, we are unable to provide monetary or other compensation in this ins

We understand this may not be the resolution you were hoping for, but we want to assure you that we have used this experience to
reinforce our crew training programs, particularly in the areas of customer service and de-escalation techniques. Your feedback has
shared with our leadership team to help prevent similar situations in the future.

We appreciate your AAdvantage® loyalty very much, Mr. Nunez, and look forward to welcoming you on board your next America
Airlines flight.


Sincerely,
Mark Li San
Customer Relations
American Airlines

AA Ref#1-35979191183

The information in this email is confidential and is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do n
review, disseminate, distribute or copy it. If you are not the intended recipient, please delete this email from your email system.

If your comments are related to American Airlines service to, from, or in the United Kingdom and we have reached an impasse in terms of resolving your complaint, please kn
we are obligated by the Civil Aviation Authority (CAA) to inform you that you may contact a CAA-approved Alternative Dispute Resolution (ADR) provider competent to de
airline service complaints. American Airlines, however, does not participate with an ADR in resolving disputes.

# EXHIBIT I

## June 20, 2025 FAA FOIA Appeal Response (Denial of Supplemental Appeal in Case No. 2088751)

**Description:**

This exhibit contains the FAA's June 20, 2025 response to Plaintiff's supplemental FOIA appeal regarding FOIA Request No. 2088751. The Plaintiff had submitted newly discovered evidence, including the FAA's own admission to Congress that **"no criminal charges were filed and no law enforcement agencies were involved"** in FAA Case No. 2022FS050509. The FAA rejected the supplemental filing on procedural grounds, claiming the appeal window had closed.

**Relevance:**

- This exhibit is **highly probative** of Plaintiff's **APA and FOIA claims,** showing the FAA continues to withhold investigatory materials under Exemption 7 (law enforcement records), even after formally admitting to Congress that the matter was **"purely administrative"** with **no criminal component**.

- The FAA's procedural rejection further supports Plaintiff's assertion that the agency is engaging in **selective transparency and arbitrary enforcement,** both of which violate core principles of the APA and FOIA.

- This document also reinforces Plaintiff's contention that he is being **denied access to materials used against him,** while third parties like American Airlines continue to **weaponize FAA findings** to justify extrajudicial sanctions—creating a due process imbalance that the Court must address.

- Though the FAA refused to accept the supplement, the **substance of the submission remains relevant,** and the exhibit is necessary to ensure the full administrative record is preserved.

**From:** 9-FOIA-Appeals (FAA) FOIA-Appeals@faa.gov
**Subject:** Response - RE: Supplemental Appeal – FAA FOIA #2088751 – No Criminal Law Enforcement Basis (See FAA Response to Congress, Exhibit A)
**Date:** June 20, 2025 at 2:04 PM
**To:** John Nunez johnnunez@ymail.com
**Cc:** Hotline@oig.dot.gov, Rumley, Martha (FAA) Martha.Rumley@faa.gov

Dear John Nuñez:

Please be advised that it is too late to submit supplemental materials for FOIA Appeal AFAA-2025-00085, which is currently pending final signature by AFN-1 after receiving legal review. We expect to have a final response to you within the next several business days. Any correspondence sent to us after May 30, 2025, cannot be accepted under AFAA-2025-00085.

If you would like to open a **new** appeal to address additional matters, please advise.

In the future, please direct any FOIA Appeal inquiries or FOIA Appeal materials directly to the FOIA-Appeals@faa.gov email box and not to other entities. Only this Office has jurisdiction over any pending FOIA Appeal matters.

Thank you,
Appeals Team
FAA FOIA Program Office
FOIA-Appeals@faa.gov
202-267-3593

---

**From:** John Nunez <johnnunez@ymail.com>
**Sent:** Friday, June 13, 2025 5:54 PM
**To:** Rumley, Martha (FAA) <Martha.Rumley@faa.gov>
**Cc:** 9-FOIA-Appeals (FAA) <FOIA-Appeals@faa.gov>; John NUNEZ <johnnunez@ymail.com>; Hotline@oig.dot.gov
**Subject:** Supplemental Appeal – FAA FOIA #2088751 – No Criminal Law Enforcement Basis (See FAA Response to Congress, Exhibit A)

CAUTION: This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Rumley,

This message supplements my pending appeal regarding **FOIA Request No. 2088751**, linked to **FAA Case No. 2022FS050509** and the June 3, 2022 incident aboard American Airlines Flight 1124.

I am submitting new evidence from the FAA itself that directly refutes any basis for continued withholding under **Exemption 7** Specifically, the FAA's

# EXHIBIT J

**Document Title:** FAA Initial Decision – Civil Penalty Case No. 2022FS050509

**Description:**

This is the Final Initial Decision issued by Administrative Law Judge Douglas M. Rawald following an evidentiary hearing on October 8, 2024. The decision found that the FAA's key witness, Flight Attendant Ana Maria Sanchez, had exaggerated events. It gave limited credit to witness Rosa Celi only where her statements were corroborated by other evidence. Plaintiff, appearing pro se, prevailed in undermining central FAA claims.

**Relevance:**

The decision rebuts core allegations used to justify the FAA's enforcement action. It confirms that material portions of the FAA's redacted EIR are unsupported or exaggerated. It supports Plaintiff's argument that the FAA's continued redactions conceal discredited testimony and procedural failures, justifying relief under FOIA and APA.

**Relevance to Related Case:**

In *Nuñez v. American Airlines*, Case No. 1:25-cv-21630-RKA, Defendant has relied on the FAA's Initial Decision to justify ongoing restrictions on Plaintiff's ability to fly. However, this same decision undermines its own reliability due to the discredited testimony it partially relied upon. The contradiction is central to Plaintiff's judicial estoppel and due process arguments.

**SERVED: November 7, 2024**

U.S. DEPARTMENT OF TRANSPORTATION
OFFICE OF HEARINGS
WASHINGTON, DC

| | | |
|---|---|---|
| In The Matter Of: | ) | |
| | ) | Docket No. G13-23-021 |
| John Nunez | ) | |
| | ) | Case No. 2022FS050509 |
| Respondent | ) | |

**INITIAL DECISION**

**1. Pertinent Procedural History**

On September 16, 2022, the Complainant issued a Notice of Proposed Civil Penalty in the amount of $10,500 to the Respondent, alleging his behavior aboard American Airlines Flight 1124 on June 3, 2022, violated 14 C.F.R. § 121.580. On March 22, 2023, the Complainant served a Final Notice of Proposed Civil Penalty for the same amount.

In an April 6, 2023 email, the Respondent requested a hearing in this matter. On April 26, 2023, the Complainant filed a complaint.

On June 8, 2023, the undersigned judge issued an Order to Show Cause and Provide Answer ("Show Cause Order") after not receiving an answer to the complaint from the Respondent within 30 days of the service of the complaint. The Show Cause Order required a response from the Respondent by July 10, 2023. After the Respondent failed to comply with this order, the undersigned judge issued an Order Setting Prehearing Conference on July 13, 2023, to discuss, *inter alia*, the Respondent's failure to file a timely answer during a prehearing conference on September 7, 2023. On September 6, 2023, the Respondent emailed the Office of Hearings and explained that he had had a health issue as well as other circumstances that had prevented him from being able to engage in these proceedings. In a subsequent email, the Respondent attached an answer that included a general denial of the allegations. During the September 7, 2023 prehearing conference, the undersigned judge explained that the Respondent's general denial did not constitute an answer, and gave the Respondent until September 22, 2023, to file a sufficient answer and a more detailed explanation for his failure to file a timely answer. On September 8, 2023, the Respondent filed his answer, as well as an explanation for his failure to do so timely.

On June 13, 2024, the Respondent filed a Motion to Dismiss, to which the Complainant filed an opposition on June 21, 2024. The undersigned judge issued an Order Denying Respondent's Motion to Dismiss on July 2, 2024. In response that same day, the Respondent submitted an email, in which he asked for reconsideration of this denial or an interlocutory appeal. The undersigned judge issued an Order Denying Respondent's Request for Reconsideration or Interlocutory Appeal later that same day.

Also on July 2, 2024, the undersigned judge provided notice that the hearing in this matter would be held virtually through the use of videoconferencing software, beginning on October 8, 2024.[1]

At the hearing, Kimberly R. Villiers appeared on behalf of the Complainant; the *pro se* Respondent, John Nunez, appeared on his own behalf.

Based upon the evidence presented at the hearing and the applicable law, the undersigned judge has come to the following decision.

## 2. Summary of Complainant's Allegations

The Complainant alleges that the Respondent, while a passenger aboard American Airlines flight number 1124 on or about June 3, 2022, from Barranquilla, Colombia, to Miami, Florida, acted in a manner that interfered with crewmembers who were performing their duties on board the aircraft and further threatened crewmembers while they were in performance of their duties.[2] Specifically, the Complainant alleges that, after being denied use of the business class lavatory, the Respondent approached the main cabin lavatory where he yelled at both flight attendants stationed at the rear of the aircraft.[3] According to the Complainant, the flight attendants felt threatened by the Respondent's aggressive behavior.[4] During the course of the flight, the Respondent allegedly requested an alcoholic drink, which he was denied, at which point the Respondent followed the flight attendant to the rear of the aircraft, yelling and refusing to follow instructions to return to his seat.[5] The Complainant further alleges that the Respondent remained argumentative and aggressive even when the lead flight attendant went to talk to him, resulting in

---

[1] The Complainant waived any objection to a virtual hearing and the Respondent did not raise any objection to a virtual hearing. *See* Dec. 15, 2023 Complainant's Proposed Litigation Schedule; Jan. 4, 2024 Prehearing Conference Report; and Jan. 4, 2024 email from Respondent on file with the Office of Hearings.

[2] *See* Complaint at 1-3.

[3] *See* Complaint at 2.

[4] *See* Complaint at 2.

[5] *See* Complaint at 2.

the need to reseat two passengers away from the Respondent.[6]  After crewmembers reported the Respondent's disruptive behavior to the captain, the flight was diverted back to Barranquilla, Colombia, where law enforcement met the aircraft at the captain's request.[7]  The Complainant alleges that the Respondent behaved in a manner that interfered with flight crewmembers in the performance of their duties and threatened a crewmember, thus violating 14 C.F.R. § 121.580.[8]

For these alleged violations, the Complainant seeks a civil penalty of $10,500.[9]

## 3.  Standard of Proof

The pertinent regulations at 14 C.F.R. § 13.224(a) and (c) place the burden of proof on the agency, except in the case of an affirmative defense, at which time the burden shifts to the party asserting the affirmative defense.  In accordance with 14 C.F.R. § 13.223, the burden of proof in a civil penalty action is a "preponderance of reliable, probative, and substantial evidence." Because circumstantial evidence can be reliable, probative, and substantial,[10] a party may use circumstantial evidence to sustain its burden of proof.[11]

## 4.  Factual Findings

After considering the pleadings filed in this case and the testimony and evidence admitted at the hearing, the undersigned judge finds the following facts to have been proven by a preponderance of the evidence:[12]

On June 3, 2022, the Respondent was a passenger on American Airlines flight number 1124, scheduled to depart from Barranquilla, Colombia, and land in Miami, Florida.[13]  The subject flight was operated under 14 C.F.R. Part 121.[14]  The flight crew included Captain Byron Jaffe, lead flight attendant/purser Rosa Celi, and flight attendants Maria Quiroz and Ana Maria Sanchez.[15]  As the purser, Ms. Celi was responsible for the business class section of the aircraft, while Ms. Quiroz and Ms. Sanchez were responsible for the main cabin of the aircraft and sat in

---

[6] *See* Complaint at 2-3.
[7] *See* Complaint at 3.
[8] *See* Complaint at 3.
[9] *See* Complaint at 4.
[10] *See In re America West Airlines*, FAA Order No. 96-3 at 31 (Decision and Order, Feb. 13, 1996) (referring to certain circumstantial evidence as "strong").
[11] *See In re Continental Airlines, Inc.*, FAA Order No. 90-12 at 20 (Decision and Order, Apr. 25, 1990).
[12] Any fact alleged in the complaint, a witness's testimony, or a statement admitted into evidence that is not included in these findings was not found to have been proven by a preponderance of the evidence.
[13] *See* Hearing Transcript at 20-21; Complaint at 1; Answer at 1; and Ex. C-3.
[14] *See* Hearing Transcript at 119-120; Complaint at 1; and Answer at 1.
[15] *See* Hearing Transcript at 21, 28, 50, and 119; Ex. C-5; Ex. C-6; Ex. R-8; and Ex. R-9.

jump seats in the rear of the aircraft.[16]

    The Respondent boarded the aircraft in Barranquilla as a non-revenue passenger (also referred to as a "D3 passenger") and was seated in his assigned seat, seat 17C, located in the main cabin of the aircraft.[17]  As a non-revenue passenger, the Respondent had obtained his ticket by only paying for the taxes on the ticket price due to his father's long-time employment by American Airlines.[18]

    On the date of the flight, the Respondent was suffering from benign prostatic hyperplasia (an enlarged prostate) as well as kidney stones, which resulted in the need to use the bathroom to urinate frequently with urgency.[19]  After takeoff, the Respondent left his seat and tried to use the lavatory located in the business class section at the front of the aircraft.[20]  The purser told the Respondent that he could not use the business class lavatory because he was seated in the main cabin.[21]  The Respondent became upset and frustrated after being denied access to the business class lavatory.[22]  Because of his frequent flyer status, the Respondent believed he should have been allowed to use the business class lavatory and so felt he had been unjustly denied access.[23]  He then walked to the rear of the aircraft to use one of the lavatories in the main cabin.[24]  When he got to the rear of the aircraft, the Respondent complained to Ms. Quiroz and Ms. Sanchez about the fact that he had been denied access to the business class lavatory.[25]  Both flight attendants were seated in jump seats in the rear galley at that time while the Respondent stood over them.[26]  The Respondent yelled at the flight attendants while expressing his frustration about being denied access to the business class lavatory.[27]  The Respondent complained about his perceived mistreatment, waving his hands while speaking loudly, including stating, "nobody treats me like shit."[28]  In response to the Respondent's tirade, the flight attendants told the

---

[16] *See* Hearing Transcript at 21-22.
[17] *See* Hearing Transcript at 33, 64, and 156; Ex. C-5; Ex. C-6; and Ex. R-9.
[18] *See* Hearing Transcript at 33 and 140.
[19] *See* Hearing Transcript at 140 and 143; Ex. R-3a; and Ex. R-3d.  While the Respondent's medical records postdate the date of the incident, Complainant did not provide any evidence to rebut the Respondent's credible testimony that he suffered from this condition on the date of the flight.
[20] *See* Hearing Transcript at 143 and 156-158 and Ex. R-9.
[21] *See* Hearing Transcript at 21; Ex. C-6; and Ex. R-9.
[22] *See* Hearing Transcript at 158.
[23] *See* Hearing Transcript at 157-158.
[24] *See* Hearing Transcript at 21-23 and 158 and Ex. R-9.
[25] *See* Hearing Transcript at 21 and 158 and Ex. R-9.
[26] *See* Hearing Transcript at 21 and Ex. R-9.
[27] *See* Hearing Transcript at 21, 23-24, 150, and 158-159; and Ex. C-6; and Ex. R-9.
[28] *See* Hearing Transcript at 21, 24, 29,144, and 145 and Ex. R-9.

Respondent that he should know the rules and that he was acting inappropriately when he should in fact be on his best behavior as a non-revenue passenger.[29]  The Respondent then used one of the lavatories at the rear of aircraft and then returned to his seat.[30]  Sometime thereafter, the Respondent got up from his seat and once again went to the back of the aircraft to use the lavatory.[31]  As he approached the rear of the aircraft, Ms. Sanchez placed the beverage cart in the aisle to block him from approaching the flight attendants, denying him access to the lavatory.[32]  The Respondent expressed his frustration at not being able to use the lavatory, once again yelling at the flight attendants.[33]  This included stating that Ms. Quiroz was a "fucking idiot" and "stupid."[34]

At some point during the flight, the Respondent requested the flight attendants provide him an alcoholic beverage, which the flight attendants refused to serve him because they suspected that he may have been intoxicated due to his level of agitation.[35]  The Respondent felt he was entitled to a beverage given his status as a platinum executive pro passenger, American Airlines' highest level of frequent flyer status, at the time of the flight.[36]  This denial added to the Respondent's level of frustration.[37]  The flight attendants subsequently decided that they could not complete beverage service for the flight because of their interactions with the Respondent.[38]

After returning to his seat from his second trip to the back of the aircraft, the Respondent received a disturbance card from the purser, Ms. Celi.[39]  In response, he once again expressed his frustration in a forceful manner.[40]  Ms. Celi then reported this interaction to the captain.[41]  Based upon the reports he had received regarding the Respondent's behavior, Captain Jaffe decided to divert the plane and return to Barranquilla, Colombia.[42]  Upon landing in Barranquilla, the Respondent deplaned in the company of an American Airline employee.[43]  As he left the aircraft,

---

[29] *See* Hearing Transcript at 26 and Ex. R-9.
[30] *See* Hearing Transcript at 22-23 and Ex. R-9.
[31] *See* Hearing Transcript at 150 and 163.
[32] *See* Hearing Transcript at 26, 27, 150, and 163 and Ex. C-14.
[33] *See* Hearing Transcript at 26, 28, and 164.
[34] *See* Hearing Transcript at 26-27 and Ex. R-9.
[35] *See* Hearing Transcript at 22, 38, and151-152; Ex. C-6; and Ex. R-9.
[36] *See* Hearing Transcript at 168-171.
[37] *See* Hearing Transcript at 168-171.
[38] *See* Hearing Transcript at 30.
[39] *See* Hearing Transcript at 27; Ex. C-6; and Ex. R-9
[40] *See* Hearing Transcript at 27; Ex. C-6; and Ex. R-9.
[41] *See* Hearing Transcript at 28 and Ex. C-5.
[42] *See* Hearing Transcript at 38; Ex. C-5; Ex. R-9; Complaint at 3; and Answer at 2.
[43] *See* Ex. C-15 and Ex. R-5a.

the Respondent told the captain, "I'm a non-rev who wanted a coke."[44]  After exiting the aircraft in Barranquilla, the Respondent requested a breathalyzer test.[45]  The results of the test revealed that the Respondent was not intoxicated at the time he deplaned.[46]

**5.  Significant Credibility Determinations**

In coming to a decision in this case, the undersigned judge made the following significant credibility determinations.

*a.  The testimony and statement from Maria Quiroz are generally credible.*

The testimony provided by Ms. Quiroz remained consistent with the information provided in her written statement made close in time to the incident.  For example, Ms. Quiroz's testimony that shortly after takeoff the Respondent came to the rear of the aircraft and yelled at her and Ms. Sanchez about being denied access to the business class lavatory, including saying that "nobody treats me like shit," was consistent with the statement Ms. Quiroz wrote on June 4, 2022.[47]  There are additional similarities between Ms. Quiroz's testimony and her written statement in how she described the Respondent getting frustrated after being denied the alcoholic beverage he requested, Ms. Sanchez using the beverage cart as a barrier when the Respondent tried to access the rear lavatory a second time, and Ms. Celi delivering a disturbance notice to the Respondent given his behavior.[48]  Further, in both her statement and her testimony, Ms. Quiroz explained that the captain made the decision to return to Barranquilla based upon reports he received regarding the Respondent's behavior.[49]  This consistency over time increases her testimony's credibility.

*b.  The Respondent's testimony is credible.*

The undersigned judge acknowledges that the Respondent is a party to this proceeding and so is therefore biased, but that does not mean his testimony is inherently unreliable.  The testimony of respondents should be subjected to the same credibility analysis as any other witness, which includes bias as one of the many factors to consider.  Most notably, the Respondent's testimony was consistent with other evidence in the record, making it more credible.  For example, the

---

[44] *See* Ex. R-5a.
[45] *See* Hearing Transcript at 187-188.
[46] *See* Hearing Transcript at 125, 186, and 194-195.
[47] *Compare* Hearing Transcript at 21 *with* Ex. R-9.
[48] *Compare* Hearing Transcript at 22, 26-28, 38, and 39 *with* Ex. R-9.
[49] *Compare* Hearing Transcript at 28-29, 38, 43, and 46-47 *with* Ex. R-9.

Respondent's testimony that he suffers from an enlarged prostate and kidney stones that result in the need to use the bathroom frequently is consistent with his medical records.[50]  Similarities exist between the testimony of Mr. Nunez and Ms. Quiroz in that they both agree Mr. Nunez left his seat shortly after takeoff to use the bathroom, Mr. Nunez used the lavatory in the rear of the aircraft after being denied access to the business class lavatory, and the Respondent was not served the alcoholic beverage he requested.[51]  Additionally, Mr. Nunez's testimony that he was not intoxicated during the subject flight is supported by the credible testimony of Major Diego Pineda.  Major Pineda explained that the Respondent appeared sober and calm upon deplaning and that the results of a breathalyzer test performed after the Respondent exited the aircraft upon landing in Barranquilla found the Respondent was not intoxicated.[52]

Additionally, the Respondent was willing to admit facts that did not put him in the best light. Specifically, the Respondent admitted that he was frustrated and felt disrespected by the flight attendants given his non-revenue status.[53]  Similarly, the Respondent admitted that he did tell the flight attendants that they couldn't treat him like "shit,"[54] and acknowledged that he is a passionate person who talks with his hands.[55]  He further admitted talking loudly to the flight attendants.[56]  This willingness to admit facts against his interests increases the overall credibility of his testimony.

     *c.  Ms. Sanchez's testimony is not supported by the record and so is less credible.*

Ms. Sanchez's credibility is negatively impacted by the failure of much of her testimony to be included in her written report and the fact that several of her assertions made while testifying are not supported by the record as a whole and are inconsistent with other evidence in the record. In completing this analysis, the undersigned judge first notes the lack of detail provided in Ms. Sanchez's written statement, which was only two sentences long.[57]  And second, and most importantly, the undersigned judge observes there are numerous instances where the evidence in the record demonstrates her testimony appears exaggerated.  For example, Ms. Sanchez testified that she had to move all of the passengers seated near the Respondent because they were afraid

---

[50] *See* Ex. R-3a and Ex. R-3d.
[51] *Compare* Hearing Transcript at 149-152 *with* Hearing Transcript at 21, 27, and 38.
[52] *See* Hearing Transcript at 184-186, and 190.
[53] *See* Hearing Transcript at 141, 145, 150, and 158-159.
[54] *See* Hearing Transcript at 144.
[55] *See* Hearing Transcript at 145.
[56] *See* Hearing Transcript at 164.
[57] *See* Ex. R-8.

of him.[58]  A video depicting the Respondent as he was asked to leave the plane, however, clearly shows passengers seated in the seats around him.[59]  In another example, the evidence in the record does not support Ms. Sanchez's assertion that the Respondent may have been going to hit her at the time she used the beverage cart to block his path to the lavatory.[60]  The video she took at the time she reportedly feared for her safety does not show the Respondent in close vicinity to her or the beverage cart, nor does it document him screaming any profanities at her or Ms. Quiroz.[61]  Instead, he appears to be simply walking back to his seat.  In considering the record as a whole, Ms. Sanchez's testimony seems embellished and exaggerated, rather than consistent with and supported by the other evidence in the case.

    *d.  The written statement of Ms. Celi is credible.*

The statement provided by Ms. Celi was consistent with the testimony provided by Ms. Quiroz and Mr. Nunez, as well as the written statement provided by Ms. Quiroz.  For example, Ms. Celi's assertions that the Respondent yelled at the flight attendants aboard the aircraft and was denied the alcoholic beverage he requested is corroborated by the testimony provided at the hearing by Ms. Quiroz and Mr. Nunez, as well as Ms. Quiroz's written statement.[62]  Additionally, Ms. Celi's report that the Respondent was upset after being denied access to the business class lavatory was consistent with the testimony provided by Ms. Quiroz at the hearing and Ms. Quiroz's written statement.[63]  Further, the testimony and written statement of Ms. Quiroz support the assertions in Ms. Celi's written statement that she provided the Respondent with a disruptive passenger notice and that the flight crew did not initially know the Respondent was flying as a non-revenue passenger.[64]  Lastly, Ms. Celi's assertion in her written statement that the Respondent felt disrespected was corroborated by the Respondent's credible testimony at the hearing.[65]

    *e.  The testimony of Rebecca Habib merits little to no weight.*

Although Ms. Habib was not a party to this proceeding, she exhibited a strong bias against the Respondent given her dislike for the Respondent after observing him while in the VIP lounge

---

[58] *See* Hearing Transcript at 59.
[59] *See* Ex. C-15.
[60] *See* Hearing Transcript at 54 and 56-57.
[61] *See* Ex. C-14.
[62] *Compare* Ex. C-6 *with* Hearing Transcript at 21, 22, 24, 25, 38, 151-152, and 164 and Ex. R-9.
[63] *Compare* Ex. C-6 *with* Hearing Transcript at 21 and Ex. R-9.
[64] *Compare* Hearing Transcript at 26-28, 33, and 39 and Ex. R-9 *with* Ex. C-6.
[65] *Compare* Ex. C-6 *with* Hearing Transcript at 141.

prior to the flight. Ms. Habib admitted that she had no idea what the Respondent consumed while in the VIP lounge, but was upset with how loud and boisterous she felt he was while in the lounge.[66] Significantly, the Respondent's behavior in the VIP lounge is not relevant to the issue in this case, which is whether the Respondent interfered with, and threatened, flight crewmembers in the performance of their duties during the flight. Further, there is nothing in the record to support Ms. Habib's testimony that the Respondent, who was seated directly behind her, was kicking and moving her seat during the flight.[67] Specifically, notes from a phone call between Ms. Habib and Aviation Safety Inspector Ronny Moon on December 5, 2022, include no mention of the Respondent kicking Ms. Habib's seat during the flight.[68]

Additionally, little weight is given to the testimony and report of Ms. Habib that the Respondent was yelling at the flight attendants in the rear of the aircraft given her admission at the hearing that she does not hear well and could only hear raised voices but was unable to distinguish whether it was the Respondent or the flight attendants.[69] Similarly, Ms. Habib's testimony that law enforcement officers boarded the aircraft and escorted the Respondent off the aircraft is contradicted by two of the videos submitted into evidence, which show the Respondent deplaning in the company of an airline employee while no law enforcement personnel were present on the aircraft.[70] Lastly, the undersigned judge notes that Ms. Habib was unable to identify the Respondent when shown one of the videos submitted into evidence.[71]

Given Ms. Habib's apparent bias towards the Respondent and lack of credibility discussed above, the undersigned judge placed little to no weight on her testimony.

## 6. Discussion of Alleged Violations

The Complainant has alleged that the Respondent's behavior during the flight interfered with the crewmembers' ability to perform their duties and that the Respondent threatened a crewmember, thus violating 14 C.F.R. § 121.580. Pursuant to 14 C.F.R. § 121.580, "[n]o person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft." A crewmember is defined as "a person assigned to

---

[66] *See* Hearing Transcript at 81-82.
[67] *See* Hearing Transcript at 83.
[68] *See* Ex. R-10.
[69] *Compare* Hearing Transcript at 84 and Ex. R-10 *with* Hearing Transcript at 93-94.
[70] *Compare* Hearing Transcript at 85, 94-95, and 102-103 *with* Ex. C-15 and Ex. R-5a.
[71] *See* Hearing Transcript at 95-96.

perform duty in an aircraft during flight time," and the definition of a flight crewmember includes a pilot "assigned to duty in an aircraft during flight time."[72]  The Administrator has further held that "[t]here is no question that a flight attendant falls within Section 1.1's definition of 'crewmember.'"[73]

> a.  *The Respondent's behavior on the aircraft interfered with the crewmember's ability to perform their duties, thus violating 14 C.F.R. § 121.580.*

Over time, the Administrator has broadly construed what constitutes interference, finding several different actions to constitute interference with a crewmember's duties.  While finding a passenger interfered with a flight attendant's duties when he placed an unwanted sandwich on the beverage cart two or three times because this action distracted the flight attendant from the performance of her duties, the Administrator emphasized the passenger's "noncompliant attitude and his disregard for the safety rules."[74]  The Administrator has also found interference when a flight attendant "was unable to handle routine duties and emergencies at her assigned duty station" while dealing with the disruptive passenger.[75]  In past cases, the Administrator has further found that refusing to comply with a flight attendant's instructions, leaving the flight attendant upset and requiring her to brief the captain,[76] verbally abusive behavior,[77] and refusing to take a seat while the seatbelt sign was illuminated, despite orders to do so,[78] constitute interference with a crewmember's duties in violation of 14 C.F.R. §121.580.

---

[72] 14 C.F.R. § 1.1.

[73] *In re Ignatov*, FAA Order No. 96-6 at 12 (Decision and Order, Feb 13, 1996).

[74] *See In re Mayer*, FAA Order No. 97-12 (Decision and Order, Feb. 20, 1997) (stating that distracting behavior cannot be tolerated on an airplane because it "distracts the flight crewmembers from the performance of their duties" and "undermines the authority of the flight attendants.").

[75] *See In re Bengry*, FAA Order No. 2003-9 (Decision and Order, Sep. 12, 2003) (acknowledging that flight attendants "have critical safety duties" when affirming the administrative law judge's finding that a passenger "interfered with the chief flight attendant's duties by causing her absence from her regular tasks and by upsetting her, thereby substantially diminishing her ability to react to an emergency.").

[76] *See In re Abroms*, FAA Order No. 2008-2 (Decision and Order, Jan. 28, 2008) (affirming a finding of interference where a passenger repeatedly refused to follow instructions from a flight attendant and stating that "[r]espect for the crew's authority is essential on an aircraft, where crew and passengers are confined to a relatively small space far above the ground.").

[77] *See In re Conger*, FAA Order No. 2007-8 (Decision and Order, Aug 2, 2007) (upholding a finding that a passenger's "obstreperous and intolerable behavior" interfered with the flight attendants' ability to perform their duties because they "were called away from their assigned duties for significant periods" and were "not able to function at a level needed to effectively manage an in-flight emergency.").

[78] *See In re Wallaesa*, FAA Order No. 2013-2 (Decision and Order, May 14, 2013) (affirming a finding of interference when the passenger "prevented the crew from completing their duties" by "standing after the pilot turned on the 'fasten seat belt sign' and refusing to sit when asked" noting that the flight attendants were required to focus their attention on the disruptive passenger and were not "ready to attend to the needs of the other passengers in their assigned sections.").

In this case, the preponderance of the evidence shows the Respondent engaged in behavior that distracted multiple flight attendants and interfered with their ability to perform their duties with his repeated angry complaints that were, in at least one instance, verbally abusive. By yelling loudly to express his frustration and telling Ms. Quiroz and Ms. Sanchez that he will not be treated like "shit," as ███ as calling Ms. Quiroz a "fucking idiot" and "stupid," the Respondent displayed a lack of respect for Ms. Quiroz and Ms. Sanchez's authority. Further, the Respondent continued to distract Ms. Quiroz and Ms. Sanchez when he continued to express his frustration after being denied the alcoholic beverage he requested and discussing how he felt his treatment was inconsistent with what he merited given his frequent flyer status with American Airlines at the time of the flight. The flight attendants were further unable to complete their assigned duties when they decided to cancel beverage service due to the Respondent's behavior. The Respondent could have waited until the aircraft had landed at its final destination to complain about his perceived mistreatment, rather than creating a disruption in the close confines of the aircraft while the airplane was thousands of feet in the air. The Respondent's conduct distracted Ms. Quiroz and Ms. Sanchez from ensuring the safety of the cabin, their primary duty as flight attendants.

Notably, the Respondent seems to misunderstand the central role of the flight attendants in maintaining the safety of the cabin while inflight. Flight attendants must primarily be able to maintain the safety of the cabin so that they can deal with any legitimate emergency. While the Respondent may have had reason to complain about the quality of service he was receiving on the flight,[79] he did not do so in the proper manner or at the proper time and instead distracted the flight attendants from being able to focus on their crucial safety duties.

In consideration of the Administrator's findings in past cases, the undersigned judge finds that the Respondent interfered with the performance of the flight crewmembers' ability to perform their duties aboard the aircraft, thereby violating 14 C.F.R. § 121.580.

b. *The Complainant failed to prove the Respondent threatened any of the flight crewmembers.*

The Administrator has applied an ordinary and reasonable person standard when determining

---

[79] The undesigned judge has not made any findings on whether the flight attendants' customer service met the standards set by their employer as this question is beyond the scope of this proceeding.

whether a Respondent's behavior rises to the level of being intimidating or threatening.[80] Following a review of the record, the undersigned judge finds that the Complainant's allegation that the Respondent threatened a crewmember was not proven by a preponderance of the evidence.

The Complaint does not specify which flight crewmember was threatened by the Respondent. Ms. Quiroz did not testify at the hearing to feeling threatened by the Respondent, nor did she mention feeling threatened by the Respondent in her written statement. Ms. Celi's written statement also does not mention her feeling threatened. Ms. Sanchez testified that she feared the Respondent might hit her, but, as discussed in detail above, Ms. Sanchez's testimony lacks credibility, especially her expressed fear of physical violence. The video Ms. Sanchez took during the flight at the time she reportedly feared for her safety does not show the Respondent in close vicinity to her or the beverage cart, nor does it document him threatening her in any way. Additionally, as discussed above, video evidence in the record depicts the Respondent calmly deplaning after the aircraft returned to Barranquilla, without police intervention, and he was described as calm and cooperative by Major Diego Pineda after getting off the aircraft.

## 7.  Civil Penalty

Because the undersigned judge has found that the Respondent violated 14 C.F.R. § 121.580, the remaining issue is determining the amount, if any, of the appropriate civil penalty to be assessed for this conduct. The Complainant seeks a total civil penalty of $10,500 for the violations as alleged in the complaint.[81] The burden of justifying the proposed civil penalty falls upon the Complainant.[82] In attempting to meet this burden, the Complainant provided no testimonial evidence about how the proposed civil penalty amount was assessed. In closing argument, Complainant's counsel pointed to the FAA civil penalty guidance, found at FAA Order No. 2150.3C,[83] as the method for calculating the proposed penalty and walked through the considerations that resulted in the Complainant's proposed penalty.

---

[80] See In re Bengry, FAA Order No. 2003-9 at 5 (Decision and Order, Sep. 12, 2003) (concluding that "many ordinary, reasonable people would find it intimidating to be photographed by someone threatening them with a lawsuit and negative media exposure."). See also In re Stout, FAA Order No. 98-12 at 9 (Decision and Order, June 16, 1998) (affirming the administrative law judge's finding that the Respondent committed violations based upon the flight attendant's reasoned and conscientious behavior.).

[81] See Complaint at 4.

[82] See In re Northwest Airlines, Inc., FAA Order No. 1990-37 at 7 (Decision and Order, Nov. 7, 1990) (finding the FAA bore the burden of justifying the amount of the civil penalty it sought.).

[83] An excerpted portion of the guidance was admitted as Ex. C-17.

An appropriate civil penalty must reflect the totality of the circumstances surrounding the violation, while providing enough substance to serve as a deterrent to both the current violator and the industry as a whole in order to promote the goal of safety.[84]  Section g of Paragraph 6 of Chapter 9 of FAA Order No. 2150.3C provides a non-exhaustive list of mitigating or aggravating factors and elements that may be considered:

> 1. degree of hazard; 2. Violation history; 3. Level of certificate and experience; 4. Compliance disposition of violator; 5. Systematic/isolated violations; 6. Corrective action; 7. Inadvertence; 8. Voluntary reporting of violations; and 9. Criminal conviction.[85]

While the undersigned judge is not expressly required to follow the provisions of FAA Order No. 2150.3C,[86] it does provide guidance.[87]  Further, the Administrator has stated that "similar criteria should be considered in assessing civil penalties in non-hazardous materials types of cases"[88] to the following statutorily required factors in considering a civil penalty involving hazardous materials violations:

> (1) the nature, circumstances, extent, and gravity of the violation; (2) with respect to the violator, the degree of culpability, any history of prior violations, the ability to pay, and any effect on the ability to continue to do business; and (3) other matters as justice may require.[89]

The undersigned judge considered all of the pertinent factors to assess a civil penalty that will deter future violations by the Respondent and members of the flying public.  In considering the relevant factors, it is important to note that the Respondent did not provide evidence of financial hardship regarding his ability to pay a sanction.

In closing argument, Complainant's counsel explained that, in determining the proposed civil penalty, the Complainant deemed the applicable section of FAA Order No. 2150.3C to be "[i]nterference with crewmember," a severity level 2 violation.[90]  Complainant's counsel further argued that the Respondent's actions in this case were reckless or intentional.[91]  In support of this argument, Complainant's counsel contended that the Respondent "admitted to being upset

---

[84] *See In re Toyota Motor Sales, USA, Inc.*, FAA Order No. 1994-28 at 11 (Order and Decision, Sept. 30, 1994); *In re Charter Airlines, Inc.*, FAA Order No. 1995-8 at 28 (Decision and Order, May 9, 1995).
[85] *See* Ex. C-17 at 7-9 (FAA Order No. 2150.3C at 9-7 through 9-9).
[86] *See Folsom's Air Service, Inc.*, FAA Order No. 2008-11 at 14 (Decision and Order, November 6, 2008) (finding that because administrative law judges are not agency personnel, they are not expressly required to follow the guidance provided in FAA Order No. 2150.3A.).
[87] *See In re Air Carrier*, FAA Order No. 1996-19 at 7 (Decision and Order, June 4, 1996) (*citing Northwest Airlines, Inc.*, FAA Order No. 1990-37 at 8).
[88] *In re Luxemburg*, FAA Order No. 1994-18 at 6 (Order and Decision, June 22, 1994) (*citing Northwest Airlines, Inc.*, FAA Order No. 1990-37 at 12 n. 9).
[89] 49 U.S.C. § 46301(e).  *See also* 14 C.F.R. § 13.16(c).
[90] *See* Hearing Transcript at 214 and Ex. C-17 at 30 (FAA Order No. 2150.3C at 9-30 (Fig. 9-9-i(2))).
[91] *See* Hearing Transcript at 214.

and frustrated."[92] The undersigned judge agrees that the interference was reckless. The Respondent, a loud talker who uses his hands when impassioned, seemingly did not appreciate how distracting he was being when he attempted to express his frustration over how he felt he had been disrespected during the flight because of his status as a non-revenue passenger. The Respondent acted recklessly, though, when he let his frustration get the best of him, resulting in him raising his voice and using profanity, which then interfered with the ability of multiple crewmembers to perform their duties.

According to the FAA's enforcement guidance, a civil penalty in the high range, from $7,500 to $10,500, is recommended for a reckless severity level 2 interference violation.[93] The starting point for discussion should be the midpoint of this range, which is $9,000.[94]

As previously explained, the undersigned judge has found facts that were less severe than those alleged by the Complainant in support of its proposed civil penalty. The undersigned judge deems these less severe facts merit consideration of a less severe penalty range. Specifically, as already discussed, the preponderance of the evidence does not support a finding that the Respondent threatened any flight crewmembers. In addition to these less severe facts, the undersigned judge further finds there are other factors to consider.[95] For example, these very experienced flight attendants could have possibly used their de-escalation training to defuse this situation prior to having to involve the captain. Instead, they seemingly made matters worse by arguing with the Respondent, raising their own voices and chastising him for how he was acting as a non-revenue passenger, and at one point denying him access to the lavatory despite his urgent need to urinate.

Finally, the undersigned judge finds it mitigating that the Respondent was suffering from an enlarged prostate as well as kidney stones, resulting in the need to use the bathroom frequently with urgency, and experienced excruciating pain when denied the use of the lavatory. Such angst provides some explanation for his frustration and behavior, though it does not justify his distracting the flight attendants from their important safety duties. Accordingly, in light of all the circumstances in the case, the undersigned judge finds a civil penalty in the moderate range,

---

[92] *See* Hearing Transcript at 214.
[93] *See* Ex. C-17 at 4-5 (FAA Order No. 2150.3C at 9-4 through 9-5 (Figs. 9-1 and 9-2)).
[94] *See* Ex. C-17 at 3 (FAA Order No. 2150.3C at 9-3, Chap. 9, ¶ 6(b)(2) (stating "[c]ounsel begins with a sanction at the midpoint of the applicable range...")).
[95] Complainant's counsel argued that no mitigating factors existed in this case while two aggravating factors existed, the degree of hazard and the diversion of a flight with over 100 passengers. *See* Hearing Transcript at 216-218.

$4,500 to $7,500,[96] to be appropriate.  Given the overall circumstances, a civil penalty in the amount of $4,500 is appropriate for the Respondent's violation of 14 C.F.R. § 121.580.

Therefore, pursuant to 14 C.F.R. § 13.205(a)(9), **IT IS HEREBY FOUND**:

1.  During the subject flight, the Respondent interfered with the ability of crewmembers to perform their duties, in violation of 14 C.F.R. § 121.580.

2.  The Complainant failed to prove by a preponderance of the reliable, probative, and substantial evidence that the Respondent threatened a crewmember in the performance of their duties.

**AND ORDERED:** the Respondent shall pay a civil penalty in the amount of $4,500.[97]

DOUGLAS M. RAWALD
Administrative Law Judge

Attachments:
1.  Service List
2.  Appendix 1: Complainant's Exhibits
3.  Appendix 2: Respondent's Exhibits

---

[96] *See* Ex. C-17 at 4-5 (FAA Order No. 2150.3C at 9-4 through 9-5 (Figs. 9-1 and 9-2)).
[97] Pursuant to 14 C.F.R. § 13.233(a), "A party may appeal the administrative law judge's initial decision, and any decision not previously appealed … pursuant to §13.219, by filing a notice of appeal in accordance with § 13.210 no later than 10 days after entry of the oral initial decision on the record or service of the written initial decision on the parties.  The party must serve a copy of the notice of appeal on each party in accordance with § 13.211."  The party must then file an appeal brief within 50 days from the date of service of this order. *See* 14 C.F.R. § 13.233(c).

Docket No. G13-23-021                                      Initial Decision, page 15

Docket No. G13-23-021
(Civil Penalty Action)

## SERVICE LIST - BY E-MAIL

Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, DC 20591
Attention:      Hearing Docket Clerk, AGC-430
                Wilber Wright Building – Suite 2W1000
Email:  9-agc-faa-hearingdocket@faa.gov

John Nunez, *Respondent*
14475 SW 23rd Terrace
Miami, FL 33175
Email: johnnunez@ymail.com

Kimberly R. Villiers, *Complainant's Counsel*
Aviation Litigation Division, Miramar Team
Federal Aviation Administration
2895 SW 145th Ave., Suite 120
Miramar, FL 33027
Phone: 202-702-4697
Email: kimberly.villiers@faa.gov

The Honorable Douglas M. Rawald, *Administrative Law Judge*
Office of Hearings, M-20
U.S. Department of Transportation
1200 New Jersey Avenue, S.E. (E11-310)
Washington, DC 20590
Phone: 202-366-5121 (Staff Assistant)
Email: Kelly.Ort@dot.gov (Staff Assistant)
Email: Jacklyn.Booker@dot.gov (Attorney Advisor)

Docket No. G13-23-021
(Civil Penalty Action)

## Appendix 1: Complainant's Exhibits

C-1  Washington Operation Center Initial Notification, dated June 3, 2022

C-2  [*Not Admitted*]

C-3  American Airlines Contact Sheet for Persons Involved and Aircraft Information

C-4  Respondent's Passenger Name Record, dated June 4, 2022

C-5  Flight Crew Incident Report from Byron Jaffe, dated June 3, 2022

C-6  Inflight Crew Statement from Rosa Celi, dated June 4, 2022

C-7  [*Withdrawn*]

C-8  [*Withdrawn*]

C-9  Statement from Nick de la Hoz, dated June 3, 2022

C-10  Passenger List for American Airlines Flight Number 1124 on June 3, 2022

C-11  Letter of Investigation from Inspector Moon to John Nunez, dated August 1, 2022

C-12  Email from John Nunez to Inspector Mood, dated August 4, 2022

C-13  [*Withdrawn*]

C-14  Video Recorded by Ana Maria Sanchez During American Airlines Flight Number 1124 on June 3, 2022

C-15  Video Recorded by Ana Maria Sanchez During American Airlines Flight Number 1124 on June 3, 2022

C-16  Picture of Passenger Details for John Nunez

C-17  Excerpted pages from FAA Order No. 2150.3C

Docket No. G13-23-021
(Civil Penalty Action)

## Appendix 2: Respondent's Exhibits

R-1a    Admiral Club Credit Card for John Nunez [*Sealed*]

R-1b    American Airlines AAdvantage for John Nunez

R-1c    [*Not Admitted*]

R-2a    [*Not Admitted-Duplicative*]

R-2b    [*Not Admitted*]

R-3a    Medical Records for John Nunez

R-3b    [*Not Admitted*]

R-3c    [*Not Admitted*]

R-3d    Medical Records for John Nunez

R-4a    News Article

R-5a    Video from American Airlines Flight Number 1124 on June 3, 2022

R-6a    [*Not Admitted*]

R-6b    [*Not Admitted*]

R-7    [*Not Admitted*]

R-8    Inflight Crew Statement from Ana Maria Sanchez, dated June 7, 2022

R-9    Inflight Crew Statement from Maria Quiroz, dated June 4, 2022

R-10    Record of Telephone Conversation between Inspector Mood and Rebecca Habib, dated December 5, 2022